THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
PHILLIP ELSTON *et al.*, Defendants-Appellants.
First District (1st Division)   No. 85—1924

Opinion filed June 29, 1987.—Rehearing denied August 24, 1987.—Modified
opinion filed August 31, 1987.

Samuel J. Cahnman, of Springfield (Mary Ellen Dienes, of counsel), for
appellant Henry Johnson.

Paul P. Biebel, Jr., Acting Public Defender, of Chicago (Linda J. Seeley,
Assistant Public Defender, of counsel), for appellant Phillip Elston.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Paula Carstensen, and Mark F. Smolens, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

Defendants Elston and Johnson, along with codefendants Lincoln and Watson, were jointly indicted on charges of murder, attempted murder, aggravated battery, residential burglary, and home invasion in connection with an incident occurring March 3, 1984, at 1741 East 71st Street in Chicago. All defendants except Watson gave post-arrest statements to police. Prior to trial, Watson was granted a severance but Elston and Johnson's motions for severance were denied. At the close of the People's evidence, the trial court granted defendants' motions for directed findings as to the charges of armed robbery, residential burglary, and home invasion. The jury then found the defendants guilty of home invasion, aggravated battery, and attempted murder of Donald Mitchell and Pamela Eskridge, and of the murder of Tony Carter. Judgment was entered on all findings, but later vacated as to the home invasion count. After sentencing hearings, defendants Elston and Johnson received respective terms of 35 and 30 years' incarceration for murder, and both received two 10-year concurrent terms for attempted murder.

The facts of this case are set out more fully in *People v. Lincoln* (1987), 157 Ill. App. 3d 700. For the purposes of this case the following facts are set forth. In their investigation, the police recovered the stereo equipment, which Elston allegedly removed from Mitchell's apartment during the incident, from Lincoln's apartment the same day. Elston was later arrested at his place of employment and brought down to the police station for questioning. Elston permitted police to search his car at the time of his arrest and, in the search, a spent shotgun shell was recovered from the auto. Eskridge identified Elston at the police station as one of the perpetrators and Elston then admitted holding a shotgun on Carter when it went off. Codefendant Johnson, also in a post-arrest statement, told police that he, Elston, Lincoln and Watson had discussed going over to Mitchell's house to "take care of him" at a party that the codefendants attended the night before the incident. Johnson and Elston showed the police where the guns used in the incident were located. Codefendant Lincoln gave a post-arrest statement corroborating Johnson's as to the first meeting at the party and also told of a second meeting at Lincoln's apartment, where the four men again discussed "taking care of" Mitchell before

arming themselves and going next door.

Elston's statement did not relate any plan to harm or kill Mitchell and contradicted his codefendant Johnson's statement in some aspects. Eskridge was the only witness who testified that she saw Elston in the apartment that day. Haggins testified that during the incident she saw Johnson on the back porch from the bedroom window in the apartment. No prosecution witness testified to seeing Elston with a weapon and he contended that he went to the apartment unarmed and merely recovered his stereo. Elston contends that he came upon the incident in progress and that he decided to then repossess his stereo from Mitchell's apartment because Mitchell had not yet paid for it. Elston states that he took the stereo next door to Lincoln's apartment and when he returned he found Johnson holding a shotgun on Carter, who was standing in the closet. Elston's defense was that he was attempting to prevent Johnson from shooting Carter and as he wrestled the rifle from Johnson, the gun accidentally discharged.

Mitchell testified that he never saw Johnson in the apartment; Eskridge testified that she saw an unknown male in the hallway outside the front door whom she identified at trial as Johnson; and Haggins testified that she saw Johnson with a rifle on the back porch. Johnson's statements interlocked with Lincoln's as to the plan but differed with Elston's concerning the shooting of Carter. Johnson contends that it was Elston, not himself, who ordered Carter into the closet. Johnson also claims that the gun did not discharge after the struggle over its possession with Elston, but that after Elston had taken the gun from him, Elston went over to the closet, opened the door, and deliberately shot Carter in the midsection.

After their oral statements to the detectives, each of the defendants made a transcribed, court-reported statement to an assistant State's Attorney. The unredacted oral statements were given to the jury through the testimony of a police detective and, later, redacted versions were published to the jury with limiting instructions that each statement could only be considered as a factor in determining the guilt of the defendant who made that statement. All of the defendants denied the truth of parts or all of their statements. The defendants renewed their motions for severance at the time the oral statements were admitted into evidence in their unredacted form. None of the defendants took the stand and the jury was instructed not to take into account the fact that a defendant did not testify. Judgment was entered on the jury findings that defendants committed murder and attempted murder. Defendants' motion for a new trial was denied and, as stated, Elston and Johnson were sentenced to

terms of 35 and 30 years, respectively, for murder and two concurrent 10-year terms each for attempted murder.

Defendants Elston and Johnson appeal their convictions and sentences on the grounds that the trial court erred in denying their motions for severance; that the People failed to prove beyond a reasonable doubt that defendants agreed, aided or abetted in the murder of Tony Carter and the attempted murders of Eskridge and Mitchell; that reversible error occurred in the jury instructions given on attempted murder charges because they did not include the instruction that the jury must find that the defendants acted with specific intent to kill; and finally, that the 30- and 35-year sentences for murder were excessive.

■ In deciding the merits of the defendants' contention that severance was required here, we note that the general rule in Illinois criminal procedure is that jointly indicted defendants are tried together before the same jury. (*People v. Lindsay* (1952), 412 Ill. 472, 480.) However, as was established in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, and discussed at length in a companion case, *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 704, the State may not use, at a joint trial, the extrajudicial statements of codefendants which inculpate the defendant because to do so would abridge the defendant's sixth amendment rights of confrontation since a codefendant statement cannot be cross-examined to test its reliability. As stated in *Lincoln*, although the trial court redacted the written statements of the codefendants to remove any incriminating references to Elston and Johnson, it was too late because the unredacted oral statements had already been admitted into evidence through the testimony of a detective so that the so-called *"Bruton"* problem remained unresolved. The statements of Elston and Johnson retained their exculpatory nature; each was facially incriminating toward the other codefendant and prejudicially corroborated their own statements, which they both denied were true, at least in part, at trial. Nevertheless, the trial judge found the statements were properly admissible because they did interlock, and were permitted in such circumstances under *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, which was an exception to the general rule established in *Bruton*.

■ In *Parker*, the court carved an exception to the inadmissibility of codefendant statements at joint trials to permit, with proper limiting instructions, the admission of a codefendant statement where "the defendant himself has confessed and his confession 'interlocks' with and supports the confession of his codefendant." (442 U.S. 62,

64, 60 L. Ed. 2d 713, 718, 99 S. Ct. 2132, 2135.) However, as discussed in *Lincoln*, the United States Supreme Court rejected the *Parker* court's interlocking statement grounds of admissibility in *Cruz v. New York* (1987), 481 U.S. 1168, 95 L. Ed. 2d 162, 107 S. Ct. 1714. Although *Cruz* does not rule out the admissibility of interlocking codefendant statements altogether, to be admissible there must be an independent ground for their admission. (See *People v. Lincoln* (1987), 157 Ill. App. 3d 700; *People v. Tyner* (1964), 30 Ill. 2d 101, 195 N.E.2d 675.) For the reasons set forth in a companion case, *People v. Lincoln*, we hold that the admission of the codefendant statements here on the very basis which was rejected by the United States Supreme Court during the pendency of this appeal warrants reversal of these defendants' convictions (*People v. Johnson* (1986), 148 Ill. App. 3d 163, 178). Thus, the defendants' convictions must be reversed. See *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 706.

■ Additionally, because we do reverse the defendants' convictions, we must make a finding concerning the sufficiency of the State's evidence herein, in order to insure that the defendants are not subjected to double jeopardy at their retrial on these charges. (See *People v. Frazier* (1984), 127 Ill. App. 3d 151, 153-54, 469 N.E.2d 594; *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366.) Based on the evidence of a plan to get Mitchell and the group acts in furtherance thereof and subsequent acts of concealment (*cf. People v. Fields* (1978), 65 Ill. App. 3d 278, 282, 382 N.E.2d 337, 339-40), we believe there is sufficient evidence on the attempted murders of both Mitchell and Eskridge to permit retrial on those counts. Likewise, the evidence against both Elston and Johnson on the murder charges was sufficient, in our judgment, to support the verdict at trial because each admitted holding the shotgun on Carter just prior to his killing and, thus, had participated in the crime. Our findings as to the sufficiency of the evidence concerning the defendants' convictions for purposes of protecting them from double jeopardy is not intended to establish any determination as to their guilt or innocence to bind the court on retrial. *People v. Taylor* (1979), 76 Ill. 2d 289, 309, 391 N.E.2d 366, 375.

■ Finally, in this case, as in *Lincoln*, the jury received instructions defining attempted murder that did not require them to find a specific intent to kill under those charges. (Illinois Pattern Jury Instructions, Criminal, No. 7.01 (2d ed. 1981) (IPI Criminal 2d No. 7.01)). The instructions permitted the jury to find Elston and Johnson guilty of attempted murder if they were found to have acted with knowledge that such acts created a strong probability of great bodily

harm to another person even if the evidence did not establish that they themselves had acted with an intent to kill. An instruction is improper if it fails to make clear that to convict for attempted murder, nothing less than a criminal intent to kill must be shown. (*People v. Harris* (1978), 72 Ill. 2d. 16, 27 (reversal of two convictions where improper attempted murder instructions given).) The State has conceded error in the jury instructions here, and we also note the error for purposes of guiding the court at the new trial.

Accordingly, the convictions and sentences of Elston and Johnson for the murder of Tony Carter and the attempted murders of Mitchell and Eskridge are hereby vacated and the cause is remanded to the circuit court of Cook County for a new trial on the murder and attempted murder charges consistent with this opinion.

Judgment reversed in part, vacated in part, and cause is remanded with directions.

O'CONNOR and MANNING, JJ., concur.