THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MELVIN PARKS *et al.*, Defendants-Appellants.

First District (3rd Division)  Nos. 86—1177, 86—1225 cons.

Opinion filed April 13, 1988.

Steven Clark and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, Patricia Y. Brown, and James M. Sullivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendants Melvin Parks and Joseph Johnson, represented by separate counsel, were jointly tried before a jury and convicted of burglary. The trial court sentenced each defendant to a term of 12 years. On appeal, Johnson contends that the trial court abused its discretion in denying a request for a continuance when his attorney became ill. Both defendants contend that they were denied a fair trial due to improper prosecutorial comments, and that the admission of their post-arrest interlocking confessions was erroneous. Defendants contend further that the trial court erred when it sentenced Parks as a Class X offender and consequently erred in sentencing Johnson to a term proportionate to Park's sentence.

On November 1, 1985, at approximately 1:20 a.m., defendants were arrested in an empty apartment in Chicago. Edelmiro Perez, the building's owner, testified that 2 of the 10 apartments in the building were empty and being remodeled. A neighbor notified him that there were noises in an empty apartment. Perez walked over to the building, saw broken glass in the transom above the front door of the building, discovered the door was blocked from the inside, heard noises, and telephoned the police. Inside, he and the police found the doors to the vacant second- and third-floor apartments were forced open. Perez believed that some power tools were missing and that the paint cans had been moved to the front door. New sinks were being installed in the apartments.

Officers Manuel Delatorre and Jeffrey Messina testified for the State that they were near the apartment building when they heard the call on the radio. They immediately went up to the building, saw the broken window and found that the door had been jammed shut from the inside. They forced their way into the building by kicking in the barricaded door. They found pieces of wood had been wedged between the stairs and the door handle. The officers found nothing in the second-floor apartment, but the door appeared broken. Delatorre entered the third-floor apartment, where the door had been forced open, and he saw defendants jump out the window onto the roof of a one-story shop located between two apartment buildings. The men were arrested. The officers testified that there were several unconnected sinks in the apartment.

Defendants were taken to the police station and questioned sepa-

rately. Both defendants stated that they had entered the building to steal sinks. Johnson broke the window above the front door, climbed in, opened the door for Parks, and secured the door by placing boards against it. While in the second-floor apartment, they heard police entering, and they moved to the third floor, where they hid until Delatorre entered and they jumped through the window. The officers testified that neither defendant stated they entered the building to drink liquor out of the rain. The officers denied that it was raining that evening. Perez stated that it had been drizzling.

Parks testified that at 12:45 a.m. he went to a liquor store, where he encountered his friend, Johnson. After a discussion, they decided to have a drink. They reentered the liquor store and bought a pint of rum. They went to a restaurant, found it was closed, and then went to the bus stop intending to take a bus to a restaurant which would be open. The bus stop was located in front of the Perez apartment building. Parks told Johnson the building was abandoned. Defendants decided to drink the rum while they waited for a bus. When it began to rain, they entered the building through an open door and moved upstairs to an empty apartment to avoid the strong odor of urine in the hallway. The second-floor apartment had wet paint on the floor, so they moved up to the third-floor apartment, where they sat and drank rum.

Fifteen minutes later, Johnson went to the window to see if the rain had stopped and noticed police officers had arrived. Parks stood in the open apartment doorway as he watched Officer Delatorre ascend the stairs, draw his weapon, and tell Parks to "freeze." The officers entered the apartment, patted down both defendants, and handcuffed them. Parks denied telling the officers they entered the building to steal sinks and denied that the police asked them about tools or paint cans.

Johnson did not testify, but offered the stipulated testimony that he was taken to the hospital at 4:43 a.m. where Dr. Remilo Hernandez examined him. Dr. Hernandez would have testified that Johnson's breath smelled of alcohol and that his blood-alcohol level was 107.4 milligrams.

The parties stipulated that between 11 p.m. and 2 a.m. that night there was .01 inches, .02 inches, and .051 inches of rain each hour, respectively.

In rebuttal, the State presented evidence that Parks pled guilty and was convicted of robbery in 1980 and was sentenced to four years' probation with the first 20 days spent in prison. Parks pled guilty and was convicted of robbery in 1981 and was sentenced to a

term of three years.

Johnson contends that the trial court abused its discretion in denying his motion for a continuance. Assistant public defenders Neil Spector and Thomas Pendergast represented Johnson and began the trial on March 20, 1986. Preliminary matters were presented and resolved, and a jury was selected. On March 21, opening statements were given. Spector gave the opening statement for Johnson. The State presented its first two witnesses. Pendergast cross-examined Perez, and Spector cross-examined Delatorre. The trial was continued for the weekend until Monday, March 24. On March 24, Pendergast moved for a continuance because Spector had needed an emergency appendectomy the prior evening. Pendergast informed the court that he had not planned on finishing the trial with Spector. Pendergast explained that he had given Spector his trial notes. The court denied the motion, explaining that the purpose of a "lead chair" and "second chair" was to avoid the need for continuances and that it could not continue a jury trial for several weeks.

■■ Motions for continuances are addressed to the discretion of the court. (Ill. Rev. Stat. 1985, ch. 38, par. 114—4(e).) In order to find an abuse of discretion, defendant must show the denial in some way hindered the accused in the preparation of his defense and thereby prejudiced him. *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356.

■■ Pendergast was present for the first two days of trial and cross-examined one of the State's two witnesses. He was adequately prepared and provided effective assistance to Johnson. (See *People v. Nobles* (1980), 83 Ill. App. 3d 711, 404 N.E.2d 330, citing *People v. Miller* (1958), 13 Ill. 2d 84, 148 N.E.2d 455 *cert. denied* (1958), 357 U.S. 943, 2 L. Ed. 2d 1556, 78 S. Ct. 1394.) Only one witness for each side remained. Under these circumstances, we find the trial court did not abuse its discretion in denying the motion. See *People v. Cates* (1982), 111 Ill. App. 3d 681, 444 N.E.2d 543.

■■ Defendants next contend that they were denied a fair trial because of the cumulative effect of prosecutorial remarks made during closing arguments. The trial court's determination of the propriety of comments made during closing arguments will not be disturbed absent a clear abuse of discretion. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) A reviewing court must assess the arguments of counsel in the context of the entire trial. (*People v. Valentin* (1985), 135 Ill. App. 3d 22, 480 N.E.2d 1351.) Moreover, an improper remark does not constitute reversible error unless it results in substantial prejudice to the accused. *People v. Pittman* (1982), 93 Ill.

2d 169, 442 N.E.2d 836.

■ Defendants first point to prosecutorial comments which they maintain improperly attacked defense counsel. For example, the prosecutor stated in rebuttal closing argument: "I submit to you that [Perez] does not have to be hassled just for being a victim of a crime." Defendants concede this was made in response to the defense's elicitation of testimony on cross-examination that Perez had refused to grant the defense a pretrial interview. The court sustained an objection to the use of the word "hassled." The prosecutor also stated, in regard to defendants' cross-examination of Perez, "And you heard the manner in which questions were asked of him, where whenever the answer would come out in the way they didn't like it, they would always manage to cut him off." The court overruled an objection, stating that it would instruct the jury. The prosecutor then commented that defendants also may refuse to give pretrial interviews. These comments were invited, and no error may be claimed. *People v. Trimble* (1985), 131 Ill. App. 3d 474, 475 N.E.2d 971.

Defendants next highlight comments in the State's rebuttal argument that the defense attempted to "mislead" the jury by trying to show an incomplete investigation was done. Defendants argued that the police failed to fingerprint the apartments. The State responded there was no reason to prove defendants had been in the apartment when they were caught there. Defendants argued that the police failed to photograph any damages in the apartments. The State countered that it had no need to show any disruption in the apartments to prove burglars had been present. Defendants maintained the police failed to telephone Perez to verify whether the power tools were actually missing. The State replied that it was not necessary to show any property was actually stolen. The record shows, therefore, that the State merely commented on the evidence in responding to defendants' arguments.

Defendants point to further error in the State's rebuttal argument answering defendants' query as to why the State's Attorney was not brought in to take written confessions from defendants. The prosecutor replied that the defense knew that the State's Attorney was called in on violent crimes. Again, the comment was invited.

Defendants contend further that it was error for the State to argue that defendants committed the offense of burglary and not criminal trespass to land. These comments were invited by both defense attorneys' references to the occurrence as "a mere trespass."

Defendants next point to a prosecutorial rebuttal argument indicating there would be no intoxication defense instruction. Objections

were overruled. The entire defense rested on Parks' testimony that defendants entered the building to drink rum in a dry place. These comments were not prejudicial.

The State also commented that Johnson could hold his liquor without acting intoxicated, and it argued: "By the way, Mr. Parks said something interesting in his testimony. He said Mr. Johnson was drinking as usual. Well, use your own common life experience in this. You know that people who drink as usual, who drink more often than most, they can stand up to alcohol a whole lot better than someone who hardly ever takes a drink." An objection was overruled. We find no prejudicial error in this remark.

Defendants contend further that the prosecutor improperly argued facts not in evidence in an attempt to rehabilitate Delatorre's prior inconsistent statement. Delatorre testified that a neighbor told Perez of noises in the building. Before the grand jury, Delatorre testified that Perez said he had seen two men go into the building. The prosecutor commented that the grand jury heard 50 cases a day, and it was possible that the reporter did not accurately transcribe what Delatorre had said. While it is improper to comment on facts not in evidence, we cannot hold that his remark requires reversal.

Defendants finally point to the prosecutor's comment to the jury that if it accepted defendants' theory it would have to believe there was a conspiracy between Perez and the police officers. The argument does not go to identification, which was not an issue here. Instead, it goes to the witnesses' observations of defendants' conduct, which is a matter of credibility. (See *People v. Roman* (1981), 98 Ill. App. 3d 703, 424 N.E.2d 794.) The comment does not constitute reversible error.

In reviewing the record carefully, we cannot say that the prosecutorial comments combined to so infect the trial with unfairness as to make the conviction a denial of due process. (*Darden v. Wainwright* (1986), 477 U.S. 168, 91 L. Ed. 2d 144, 106 S. Ct. 2464.) Moreover, the evidence against defendants was overwhelming.

The evidence established that defendants broke into the building and entered two empty apartments. Within minutes, Perez telephoned the police. Coincidentally police officers were directly in front of the apartment building. Defendants attempted to escape out of a window and found themselves literally trapped in the completely enclosed area connecting two buildings, with police officers blocking the only possible exits.

In light of the overwhelming evidence of defendants' guilt, any possible impropriety of the closing argument was harmless beyond a reasonable doubt. (*People v. Carter* (1985), 132 Ill. App. 3d 523, 477

N.E.2d 1307.) The trial court did not abuse its discretion in determining that any prejudicial effect resulting from these comments did not require a new trial. See *People v. Trimble* (1985), 131 Ill. App. 3d 474, 475 N.E.2d 971.

■ In defendants' supplemental brief, Parks contends that under the holding in *Cruz v. New York* (1987), 481 U.S. 1168, 95 L. Ed. 2d 162, 107 S. Ct. 1714, his sixth amendment right to confrontation was violated when Johnson's statement to the police was admitted into evidence and Johnson did not testify. Johnson argues that the admission of Parks' confession deprived him of a fair trial because it was unreliable hearsay.

The holding in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, prohibits the State from using, in a joint trial, a codefendant's extrajudicial statements against the defendant. One defendant may not compel a codefendant to testify, and thus cannot cross-examine the codefendant's statements, and consequently such use violates defendant's sixth amendment right of confrontation.

In a plurality decision, in *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, the Court permitted the limited use of codefendants' statements in situations where the confessions "interlocked" as to material facts and thus did not result in unfair prejudice requiring severance.

In *Cruz v. New York,* however, the Court rejected the plurality opinion in *Parker.* The *Cruz* holding prevents the admissibility of a nontestifying codefendant's interlocking statement at a joint trial. (See also *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056 (confession not necessarily reliable simply because some facts interlock with facts in defendant's statement).) Nevertheless, a nontestifying codefendant's statement may still be admitted if supported by sufficient indicia of reliability to be directly admissible. *Cruz v. New York* (1987), 481 U.S. 1168, 95 L. Ed. 2d 162, 107 S. Ct. 1714; *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 510 N.E.2d 1026; *People v. Elston* (1987), 158 Ill. App. 3d 652, 511 N.E.2d 710.

■ In the present case, at a joint trial the State offered the post-arrest confession of nontestifying Johnson into evidence and thus it might not be admissible under *Cruz.* That statement was directly admissible against Parks, however, due to the independent indicia of the reliability of the statement. (See *People v. Gibson* (1987), 156 Ill. App. 3d 459, 509 N.E.2d 563.) Parks' confession, properly considered against him, is not contradicted by Johnson's statement. Johnson stated that defendants broke the transom, entered the building to

steal sinks, barricaded the front door, entered the second- and third-floor apartments, and tried to escape from the police. The officers and Perez testified that the transom was broken, that the door was blocked with boards from the inside, that the apartment doors appeared forced, and that paint or sinks appeared to have been moved and tools were present in the apartment. Thus, the testimony of the police officers and Perez regarding the physical evidence at the scene strongly corroborated the confessions. This physical evidence and detailed testimony constitutes independent indicia of the reliability of Johnson's statement.

■ Johnson presents no confrontational rights objections because Parks testified. Instead, Johnson argues that the introduction of Parks' statement prejudiced him and thus deprived him of a fair trial. Johnson maintains that defendants' confessions were the same and, under *Cruz*, "the more interlocking are the alleged confessions, the more prejudicial is the codefendant's [statement] when admitted against" Johnson.

At trial, Johnson's counsel repeatedly and vehemently argued that defendants' statements were very different. "The reason we have separate counsel is because supposedly Mr. Parks [gave] a more complete statement implicating Mr. Johnson than Mr. Johnson himself gave."

As discussed above, the evidence against defendants was overwhelming. Even without defendants' statements, the result would remain the same. Thus, Johnson suffered no unfair prejudice by the introduction of Parks' statement against him. Furthermore, if any error occurred in the introduction of Johnson's statement against Parks, it was harmless error beyond a reasonable doubt for these same reasons. See *People v. Gibson* (1987), 156 Ill. App. 3d 459, 509 N.E.2d 563.

■ Defendants finally challenge their sentences. Parks argues that no evidence was presented at trial to establish that his prior two felony convictions could bring him under the extended-term sentencing. Section 5—5—3(c)(8) of the Uniform Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8)) provides that when a defendant is convicted of a Class 1 or 2 felony, after having twice been convicted of any Class 2 or greater class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, the defendant shall be sentenced as a Class X offender. The provision does not apply, however, unless "the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction of the first; and (3) the third felony was committed after conviction on the sec-

ond." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).) The State presented the trial court with certified copies indicating the dates of Parks' arrests and convictions for two Class 2 felonies, and defense counsel stipulated to that evidence, but there was no evidence of when the offenses were committed.

Consequently, sentencing Parks as a Class X offender under this statute was improper. (See *People v. Hargis* (1983), 118 Ill. App. 3d 1064, 456 N.E.2d 250.) Furthermore, the trial court expressly stated that Johnson's sentence was "proportional to the sentence entered against" Parks, as they were equally responsible. Thus, the matter must be remanded for resentencing of both defendants.

For the foregoing reasons, the judgments of conviction of the circuit court of Cook County are affirmed. The sentences are vacated, and the causes are remanded for resentencing.

Judgments of conviction affirmed; remand for resentencing.

RIZZI and FREEMAN, JJ., concur.