THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
GILL O. BAILEY, Defendant-Appellant.

First District (4th Division)   No. 1—86—0866

Opinion filed April 27, 1989.

JIGANTI, P.J., dissenting.

Randolph N. Stone, Public Defender, of Chicago (Kendall Hill, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry and Gael M. O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant was convicted of murder and attempted armed robbery and was sentenced to 40 years' imprisonment on the murder conviction. On appeal, defendant argues that he should receive a new trial because: (1) the trial court should have granted him a separate trial from his codefendant, Henry Harris, on the grounds that the defendants would present antagonistic defenses and would be prejudiced by admission into evidence of their pretrial inculpatory statements; (2) the trial court accorded defendant only eight peremptory challenges even though defendant was allegedly entitled to 14 peremptory challenges; (3) the trial court improperly denied defendant's pretrial motion to waive a sentencing jury and thereafter improperly permitted the State to death-qualify the jury; and (4) the trial court erroneously admitted into evidence an Olde English beer bottle found near the scene of the crime, and also permitted the arresting officer to testify regarding his prior "street stops" of defendant. Defendant also asserts that his attempted armed robbery conviction should be reversed because the evidence was insufficient to prove him guilty of this crime.

Because we conclude that antagonisms in the two defendants' inculpatory statements and trial strategies deprived defendant of a fair trial, we reverse and remand.

Defendant was convicted of the murder and attempted armed robbery of Nathaniel Jakes on September 23, 1983, at approximately 9

p.m. in Chicago. Evidence produced at trial established that the victim had been shot twice, once in the head and once in the chest, and that he died as a result of his chest wound. At the time of the shooting, the victim had opened his garage door in order to park his automobile in the garage, which opened into an alley. An eyewitness to the shooting, who was in the alley at the time, identified defendant in a photographic array, a police showup, and at trial as the man whom the eyewitness saw shoot the victim twice while standing near the victim's garage.

Chicago police officers arrested defendant a few days after the incident. In subsequent interrogation, defendant admitted that he and Henry Harris, his codefendant at trial, had planned to rob the victim. In his oral and court-reported confession, defendant placed blame for planning the crime upon Harris and stated that Harris had given him the gun prior to the incident and assured him the weapon was not loaded. Defendant stated that during the incident, the gun went off accidentally, firing one shot that hit the victim in the leg. Defendant said that he then dropped the weapon and fled. As he ran away, defendant heard the firing of a second gunshot.

The eyewitness to the shooting testified that he saw defendant fire two shots at the victim, hitting the victim both times. The eyewitness did not see a second assailant. The witness stated that defendant then fled the scene, falling in the alley as he fled. When arrested, defendant had cuts and bruises consistent with having recently fallen in the alley.

Henry Harris, the codefendant, told police in an oral inculpatory statement following his arrest that defendant had planned and initiated the robbery, that defendant shot the victim twice, and that both of them then fled the scene. Harris' trial strategy was that defendant had wrongfully accused Harris of participation in the attempted armed robbery and that defendant had wrongfully implied that it was Harris, rather than defendant himself, who had shot and killed the victim. Defendant presented the defense of alibi at trial, claiming that he had been at a friend's party during the entire period when the incident occurred.

Harris was acquitted of murder and attempted armed robbery. Defendant was convicted and sentenced as previously noted, and now appeals.

■■ Defendant argues first that he should be granted a new trial because the trial judge should have severed his trial from that of Harris, his codefendant. Defendant asserts that severance was appropriate because: (1) he was prejudiced by Harris' antagonistic defense

and trial strategy; and (2) he was also prejudiced by the erroneous admission into evidence of Harris' inculpatory statement, which defendant could not subject to cross-examination because Harris did not testify at trial. (See, *e.g., People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247; *People v. Bean* (1985), 109 Ill. 2d 80, 485 N.E.2d 349 (antagonistic defenses); *Lee v. Illinois* (1987), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056; *People v. Duncan* (1988), 124 Ill. 2d 400, 530 N.E.2d 423 (prejudicial inculpatory statements of a codefendant).) We agree. It is clear that the two defendants' trial strategies were antagonistic, as were their inculpatory statements.

In his oral and written statements, defendant told authorities that the robbery had been Harris' idea, that Harris had given the weapon to defendant to act as a lookout, and that Harris assured the defendant the gun was not loaded. Defendant stated that during Harris' attempt to rob the victim, the gun defendant was holding went off accidentally, hitting the victim once in the leg. Defendant stated that he then dropped the weapon and ran away; while running, defendant heard a second shot fired. Thus, defendant's statements clearly imply that it was Harris who, after defendant ran away, picked up the gun and fired the second shot that caused the victim's death. Harris' account was substantially different. Harris told police that it was defendant who planned the robbery idea and that it had been defendant who shot the victim twice.

In *People v. Dixon* (1988), 169 Ill. App. 3d 959, 523 N.E.2d 1160, as in the case at bar, the extrajudicial statement of defendant Moore, who did not testify at trial, shifted to his codefendant Dixon primary blame for the crime with which they were charged and jointly tried. The court held Moore's statement inadmissible against Dixon under the confrontation clause, observing, "Just as in *Lee* [*v. Illinois*], it is possible that Moore implicated defendant to mitigate the appearance of his own culpability by spreading the blame and/or in retaliation for what he was told or might have believed defendant related to [authorities] regarding his (Moore's) role in the shooting. In any case, we cannot say that Moore's statement was sufficiently substantiated by defendant's own statement to overcome the weighty presumption that a codefendant's statement implicating a defendant is even less reliable than ordinary hearsay and that absent the opportunity for cross-examination, its admission against the defendant violates the confrontation clause." (*People v. Dixon*, 169 Ill. App. 3d at 975.) These observations are equally valid with respect to Harris' statements in the case at bar and dictate the conclusion that Harris' statement was not admissible against defendant at trial.

It is equally evident that defendant was prejudiced by the joint trial that permitted the proceeding to be infected by the antagonisms between the defendants' trial strategies and their inculpatory statements. During opening statements, examination of witnesses, and closing argument, Harris' attorney attempted to show that his client was not a participant in the murder by emphasizing that Harris was not identified by the eyewitness (who testified that he saw only the defendant), and that all evidence pointed to Bailey as the person who committed the crimes. The record here amply demonstrates that the "trial became more of a contest between the two defendants than between the People and each defendant; the record is replete with instances in which defense counsel attacked each other's clients, as well as each other, and only a severance could have provided defendant a fair trial. [Citations.]" (*People v. Byron,* 116 Ill. 2d at 93.) Consequently, defendant is entitled to a new trial.

The State maintains that any error in the trial court's failure to sever because of the two defendants' mutually inculpatory statements was harmless beyond a reasonable doubt, citing *People v. Smith* (1988), 172 Ill. App. 3d 94, 526 N.E.2d 849, and *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130. These cases are distinguishable, however, as neither involved the cumulative prejudice of both the erroneous admission of a codefendant's statement implicating the defendant, and the antagonistic trial strategies of the defendant's codefendant, as occurred in the case at bar. The jury at defendant's trial was asked to weigh the conflicting accounts given in defendant's post-arrest statements, Harris' post-arrest statement, the eyewitness' testimony, and defendant's alibi defense. We cannot say beyond a reasonable doubt that the jury's verdict, rejecting defendant's alibi defense, was not influenced by the cumulative prejudice of the defendants' conflicting inculpatory statements and their antagonistic strategies at trial. (See *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726.) Accordingly, we cannot find that the failure to sever in the instant cause was harmless beyond a reasonable doubt.

■ In light of this disposition, we address only those arguments that pertain to matters likely to arise on retrial. Defendant maintains that the trial court erroneously admitted into evidence an Olde English beer bottle found near the scene a few days after the shooting. Defendant's oral and written inculpatory statements indicated that he had been drinking beer with Harris in the alley before the shooting occurred; the testimony of a State witness indicated that defendant had purchased Olde English beer shortly before the victim was shot

and that defendant had purchased the beer at a liquor store located a few blocks away from the shooting. (See *People v. Free* (1983), 94 Ill. 2d 378, 447 N.E.2d 218.) The State offered the beer bottle into evidence to corroborate defendant's confession and to rebut defendant's alibi defense. The evidence had probative value and was admissible for the stated purposes.

■ Defendant argues that the arresting officer should not have been permitted to testify to his prior "street stops" of the defendant and to explain in that testimony that a street stop occurs when police "stop [a person] and ask for identification of subjects who [police] believe might have criminal intentions." We agree with defendant's contention, since this testimony tended to show the defendant's propensity to commit crimes. See, *e.g.*, *People v. Pitts* (1971), 1 Ill. App. 3d 120, 273 N.E.2d 667.

■ Defendant contends that his attempted armed robbery conviction should be reversed because his confession, standing alone, is insufficient to convict him of this crime and because the State produced no other evidence to corroborate his confession. Contrary to defendant's assertion, however, the State did present evidence to corroborate defendant's confession. Defendant stated in his oral and court-reported confession that he planned to rob the victim on the particular night in question because he knew that the victim would have collected rent monies during that day and that the victim would therefore have substantial money in his possession. Defendant also said in both statements that he planned to rob the victim while the victim was in the alley parking his automobile in the garage. The eyewitness saw defendant shoot the victim as the victim was placing his car in his garage, and the victim's wife testified at trial that the decedent had collected rent monies from tenants earlier that day prior to the shooting. The testimony of the eyewitness and the decedent's wife corroborated significant elements of the defendant's confessions that he planned to rob the victim on the night and place in question. Given these consistencies in the sequence and location of the events concerning the attempted armed robbery, we find sufficient evidence corroborating defendant's confessions to sustain the conviction for armed robbery. See, *e.g.*, *People v. Barkenlau* (1982), 105 Ill. App. 3d 785, 434 N.E.2d 856; *cf. People v. Lee* (1986), 151 Ill. App. 3d 510, 531-32, 502 N.E.2d 399 (defendant likely to confabulate).

■ Defendant also contends that the trial court erroneously declined to accept his pretrial waiver of a sentencing jury and thereafter improperly permitted the State to question prospective jurors regarding their views with respect to the death penalty. Upon remand, these

issues are governed by the Illinois Supreme Court's decisions in *People v. Erickson* (1987), 117 Ill. 2d 271, 513 N.E.2d 367, and *Daley v. Hett* (1986), 113 Ill. 2d 75, 495 N.E.2d 513, in which the court held that the trial court must accept a defendant's knowing and voluntary pretrial waiver of a sentencing jury and that the trial court may not thereafter permit the State to death-qualify the jury.

Defendant also asserts that he should be granted a new trial because the trial judge should have permitted him 14 peremptory challenges in his capital case. The State indicated prior to trial that it intended to seek the death penalty with respect to defendant, but not with respect to Harris. The trial judge allowed both defendant and Harris eight peremptory challenges each during *voir dire*. The relevant Illinois Supreme Court rule states that a "defendant tried alone shall be allowed 14 peremptory challenges in a capital case, \*\*\* [while] in a single trial of more than one defendant, each defendant shall be allowed 8 peremptory challenges in a capital case." (107 Ill. 2d R. 434(d).) Because defendant will be tried alone upon remand and will therefore be entitled to 14 peremptory challenges under this rule if the State again seeks the death penalty against the defendant, we need not address the defendant's argument that he was entitled to 14 peremptory challenges in his first, joint trial.

For the reasons stated, defendant's convictions are reversed, and the matter remanded for a new trial consistent with the views expressed herein.

Reversed and remanded.

LINN, J., concurs.

PRESIDING JUSTICE JIGANTI, dissenting:
I respectfully dissent from the opinion of the majority because I believe that any error which may have resulted from the failure to sever was harmless beyond a reasonable doubt.

Rafael Lopez, an eyewitness to the crime, positively identified the defendant as the offender both in a pretrial photographic array and again in court. His identification testimony was clear and unequivocal. He stated at trial that he described the offender to police at the scene as a white-skinned black man with blonde hair, approximately 5 feet 8 inches tall and 20 or 21 years old. Officer James Entress testified that the description in the police report was of an unusually light-skinned male black with light hair, 5 feet 7 inches tall and 20 to 22 years old. The defendant in fact fit the very unique physical description. The de-

fendants's appearance was so unique that no lineup was conducted because the police could not find anyone else who even remotely fit the description. The eyewitness also testified that the defendant fell in the alley as he fled the scene. At the time of his arrest two days later, the defendant had scrape marks on his elbows and the back of his arms and a cut on the palm of his left hand. The defense at trial was alibi. However, the defendant made a very detailed pretrial statement, properly admissible against him, which placed him at the scene of the offense and which essentially admitted all of the elements necessary to convict him of felony murder. In light of this evidence, I believe it can be said beyond a reasonable doubt that neither the pretrial statement nor the trial strategy of the codefendant in any way affected the jury's verdict.