THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM WASHINGTON, Defendant-Appellant.

First District (5th Division)   No. 1—87—2950

Opinion filed March 9, 1990.—Rehearing denied April 12, 1990.

Michael J. Pelletier and Martin S. Carlson, both of State Appellate Defender's Office, of Chicago (James B. Haddad and Richard G. Agin, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Theodore F. Burtzos, and Jane E. Loeb, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON* delivered the opinion of the court:

After a bench trial, defendant, William Washington, was convicted of burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—1) and sentenced as a Class X offender, pursuant to section 5—5—3(c)(8) of the sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8)), to 14 years in prison. On appeal, defendant contends: (1) he was denied his right to counsel of choice when the trial court summarily denied his trial day request for a continuance to allow his privately retained counsel to appear; (2) he was improperly sentenced as a Class X offender where the State failed to establish at sentencing the sequence of prior convictions as required by section

---

*Justice Pincham heard the oral argument in this case, and following his resignation, Justice Gordon was substituted and he listened to the tapes of oral argument and read the briefs and record.

5—5—3(c)(8); (3) the double jeopardy clause prohibits his retrial or re-sentencing as a Class X offender; (4) his jury waiver was invalid because he had not been apprised that even though he was being charged with burglary, a Class 2 felony, he would be sentenced as a Class X offender; (5) he received insufficient notice that he would be sentenced as a Class X offender; and (6) he was improperly sentenced to an excessive prison term of 14 years. We reverse and remand this matter for a new trial.

Defendant was arrested for burglary on November 24, 1986. On December 31, he was arraigned on a charge of burglary, a public defender was appointed to represent him and the case was assigned to a trial court. Thereafter, from time to time, the trial court continued the case either on its own motion or by the parties' agreement. On March 25, 1987, the court again continued the case by agreement to April 2 and, for the first time, set the case "with subpoenas." Defendant remained in custody throughout this period.

On April 2, when the case was called for trial, the following discussion took place:

"THE CLERK: William Washington.

MR. ROZENSTRAUCH [the Public Defender]: Present before your Honor is Mr. William Washington. The matter was set for trial today. Mr. Washington informs me he, his family has retained an attorney for him who asked that the case be set for April 9th. I am ready to proceed.

MR. LEVY: State's ready to proceed today, too, Judge.

THE COURT: Motion for continuance denied.

MR. ROZENSTRAUCH: We are ready.

THE COURT: No one has filed an appearance. This is just some statement that somebody wants something continued. The family—.

MR. ROZENSTRAUCH: They have given me the name of the attorney.

THE COURT: Well, that is all very well. He is competently represented at this time. Motion for continuance denied. State ready?

MR. LEVY: We are ready to proceed today, Judge.

THE COURT: Pass it for trial."

When the case again was called for trial, the public defender informed the court that his client wished a bench trial. The trial court advised defendant of his right to a jury trial and explained that right to him. Defendant said that he understood the right and signed a written jury waiver. The matter then proceeded to trial.

The only evidence presented at trial was the testimony of Officer Carl Riggenbach, the arresting police officer, and the stipulated testimony of Fayik Hassan, the owner of the burglarized premises. The evidence showed that at about 1:55 a.m. on November 24, 1986, Officer Riggenbach received a call indicating that a burglary was in progress at a building at 5702 South Ashland in Chicago. When Riggenbach arrived, he looked into the building and saw defendant standing in a hallway by a hole in the wall leading to the Ashland Sandwich Shop. When Riggenbach approached the door leading to the hallway, defendant saw him and fled. Riggenbach chased defendant for about 100 feet and finally caught defendant when he stumbled and nearly fell to the ground outside the building. At the time, Riggenbach noticed that defendant was covered with plaster dust. Riggenbach searched defendant but found nothing on him. After arresting defendant, Riggenbach returned to the hole in the wall and noticed plaster dust in that area. He then climbed through the hole into the sandwich shop, getting plaster dust on his clothes while doing so, and saw a tire iron on the floor and three video games which had been pried open. The evidence further showed that Fayik Hassan was the owner of the 5702 South Ashland building and did not give anyone permission to enter the building during the early morning hours of November 24, 1986. At the conclusion of the trial, the court found defendant guilty of burglary.

About a month after the trial, the trial court heard post-trial motions filed by defendant's public defender and by defendant himself. The court denied the motion filed by the public defender but continued the motion filed by defendant because the motion alleged incompetent representation and he wanted to give defendant time to secure representation from the conflicts unit of the public defender's office. When defendant informed the court that he would be represented by a private attorney, the following discussion took place:

"THE COURT: Now you can afford an attorney?

MR. WASHINGTON: Yes, I had got one then, you know, it was set for trial, but my sister had got the attorney. I have his card, but he was out of town at the time, but supposedly he called here in court. I think she will be on record or something, I don't know.

THE COURT: Well look, I don't grant continuances on cases that are set for trial based on what some secretary of an attorney who has not filed an appearance, what they have to say."

Thereafter, the private attorney appeared, and he too filed a post-

trial motion, alleging, among other things, that defendant had been denied his right to counsel of choice. The court conducted a hearing on this motion, hearing testimony from a number of witnesses, including Linda Washington, defendant's sister. Ms. Washington testified that she had hired a private attorney by the name of Larry Dohman to represent defendant and had paid him $500 of the $700 he required for the representation. She said that she believed that her mother had the receipt for the $500 payment. She also stated that she was in court on April 2, 1987, and, when she heard that the case was going to trial, she contacted Dohman's secretary and asked her to call the trial court regarding the attorney's unavailability. The secretary told her that she had done so. After hearing the testimony, the court denied the motion, noting that it considered the statements about getting a private attorney to be dilatory.

At the sentencing hearing, conducted five days after the hearing on the post-trial motion, the court heard matters in aggravation and mitigation. The State first informed the court that defendant had two prior felony convictions, evidenced by a presentence investigation report showing the dates of arrest and conviction. The State then advised the court that these two prior convictions qualified defendant for mandatory Class X sentencing. Defendant's private attorney did not express any surprise regarding the prior convictions or request for mandatory Class X sentencing but, instead, argued several matters in mitigation. After arguments by counsel, the court gave defendant an opportunity to make a statement. After defendant's statement, the court then stated it was necessary to sentence defendant to a relatively long period in prison as a deterrent to others and sentenced defendant to 14 years.

OPINION

## I

Defendant's first issue is that he was denied his constitutional right to counsel of choice when the trial court summarily denied his trial day request for a one-week continuance to allow time for his retained private counsel to appear. He argues that the denial of this request constitutes reversible error. The State contends that the denial of the request was proper because the request was made on the day of trial, defendant's appointed counsel of several months was prepared to go to trial and defendant had not expressed any dissatisfaction with appointed counsel. The State further contends that even if the denial of the request were improper, a reversal is not warranted

because defendant was not prejudiced by the denial. We find that defendant was denied his constitutional right to counsel of choice.

■■ ■ A trial court's determination of whether to grant a defendant's trial day request for a continuance to allow time to obtain counsel requires a balancing of the interest in trying a case with due diligence with defendant's constitutional right to counsel of choice. (See *People v. Friedman* (1980), 79 Ill. 2d 341, 347-48, 403 N.E.2d 229, 233; *People v. Lewis* (1988), 165 Ill. App. 3d 97, 102, 518 N.E.2d 741, 744.) This balancing, of necessity, requires a review of the diligence shown by the defendant (*Friedman*, 79 Ill. 2d at 347, 403 N.E.2d at 233) and an inquiry into the actual request to see if the request is being used merely as a delaying tactic. (*People v. Green* (1969), 42 Ill. 2d 555, 557, 248 N.E.2d 116, 117.) The trial court has discretion in its decision on a continuance motion, and a reviewing court will not reverse a trial court's decision unless it is clear that there has been an abuse of discretion. (*People v. Ritchie* (1966), 66 Ill. App. 2d 417, 422, 213 N.E.2d 306, 308.) A determination of whether there has been such an abuse depends on a consideration of all the facts of a particular case. (*Lewis*, 165 Ill. App. 3d at 102, 518 N.E.2d at 744.) Having considered all of the facts of this case, we find that the trial court did abuse its discretion in denying defendant's motion for a continuance.

■■ There is no indication in the record of any prior attempt by defendant to delay the proceedings. The record shows that he was present or was represented at all court calls and never delayed any of the court proceedings. The record does disclose five continuances granted in this case from the time of defendant's arraignment to trial, but four of the continuances were by agreement and one was on the court's own motion. When defendant requested a continuance for the first time on the date of trial, he asked for only a seven-day delay to allow for the appearance of his privately retained attorney. After the court denied this motion, defendant waived a jury trial and proceeded directly to trial. The trial itself lasted a very short time, and defendant did nothing to unnecessarily prolong it.

Additionally, there is no indication in the record that defendant's request for a relatively brief continuance of seven days was being used merely as a delaying tactic. Any suspicion of such would be tenuous in light of the relatively short date requested and the evidence that the court did receive a call from the secretary of the private attorney whom defendant claimed to have retained. Moreover, the trial court failed to conduct any inquiry into the stated reason for the request for the continuance when it summarily denied the request. The court simply denied the motion and then, almost as an afterthought,

said that nobody had filed an appearance and defendant was competently represented by the public defender. Later, when discussing its denial of defendant's post-trial motion, the court indicated it denied the continuance motion because it considered it to be dilatory.

If the trial court suspected that defendant's representation that a private attorney had been hired was being used as a delaying tactic, it very easily could have confirmed or dispelled its suspicion by inquiring further into the employment of the attorney. (*People v. Green* (1969), 42 Ill. 2d 555, 557, 248 N.E.2d 116, 117.) It failed to do this, even after defendant's public defender advised the court that he had the name of the private attorney. Had it conducted the inquiry, it would have learned, as it did at the post-trial motion hearing, that defendant's family had retained a private attorney who could not appear in court on the date set for trial.

We believe that *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116, *People v. Willis* (1972), 6 Ill. App. 3d 980, 286 N.E.2d 72, and *People v. Ritchie* (1966), 66 Ill. App. 2d 417, 213 N.E.2d 306, are instructive on this issue. In *People v. Green*, the Illinois Supreme Court reversed a trial court's denial of a trial day motion for a brief continuance where defendant advised the court that a church had paid a private attorney, who had not yet filed his appearance, to represent him but he was in Washington on another case. The court found that defendant's constitutional right was violated, when the trial court, without inquiry into the truth of defendant's assertions, summarily denied his request, appointed a public defender and ordered the case to trial that day. In *People v. Willis*, the reviewing court reversed a trial court's denial of a trial day motion for continuance on facts showing that defendant had been continually incarcerated, had informed the trial court of efforts to obtain privately retained counsel, had manifested dissatisfaction with appointed counsel's services and yet had cooperated with him. In *People v. Ritchie*, the reviewing court reversed a trial court's denial of a trial day motion for continuance on facts showing that defendant had been continuously in custody for four months, had been represented by public defender for over two months, had informed the court that his relatives desired to obtain private counsel for him, had waived jury trial and had gone to trial essentially unrepresented.

We find the facts in the present case to be similar in many key respects to those in *Green, Willis* and *Ritchie*. As in *Green*, defendant claimed that someone else (his family) had hired a private attorney to represent him, the private attorney had not filed an appearance, defendant requested only a short delay in the court proceeding

to allow this attorney to appear and the court failed to conduct any inquiry to verify the employment of the private attorney. As in *Willis*, defendant had been continually incarcerated, had informed the trial court that his family had retained a private attorney and even had the name of that attorney, and had been represented by appointed counsel for a time prior to trial. And, as in *Ritchie*, in addition to the similar facts in *Willis*, defendant waived jury trial and proceeded to trial. Additionally, as we already noted, there is no evidence in the record that defendant did anything to delay the court proceeding prior to or even after his trial day request for a short continuance. On these facts and the authority of *Green*, *Willis*, and *Ritchie*, we must reverse the trial court's decision.

The State maintains that we should affirm the trial court on the basis of *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229, and *People v. Johnson* (1978), 66 Ill. App. 3d 84, 383 N.E.2d 648, which both held that a trial court's denial of a trial day continuance motion to substitute counsel was proper. Yet, both *Friedman* and *Johnson* are readily distinguishable from the present case. *Friedman* involved a situation where defendant was not in custody, had initially been represented by private counsel who withdrew and was replaced by appointed counsel, had been advised at the time of the appointment of counsel that he could substitute retained counsel on condition that he be ready for trial, which should be expected approximately three months later, had expressed dissatisfaction with appointed counsel in a letter to the trial court a good two months before trial, and appeared in court with only a letter from a recently contacted attorney who said that he could not be present for trial but would only assume representation if he could prepare for trial. *Johnson* involved a situation where defendant initially was represented by appointed counsel at arraignment but then advised the court he had private counsel, the private counsel obtained two previous continuances, one on the day of trial, and immediately prior to commencement of trial he first asked the court for appointment of new counsel. We think it clear enough from a recitation of these facts that neither of these cases could serve as a guide to our decision in the present case.

The State also argues that even if the denial of the continuance motion were improper, this case should not be reversed because defendant suffered no prejudice from representation by the public defender. The State cites *People v. Sullivan* (1977), 52 Ill. App. 3d 666, 367 N.E.2d 1042, *People v. Mims* (1982), 111 Ill. App. 3d 814, 444 N.E.2d 684, and *People v. Cole* (1977), 47 Ill. App. 3d 775, 362 N.E.2d 432, as support for this argument. *People v. Sullivan* is distinguish-

able on the basis that it did not even involve the question of whether defendant had been denied his right to counsel of choice by denial of his continuance motion. The *Sullivan* case involved the question of whether the defendant was required to proceed to trial with unprepared counsel. In responding to this question, the court said it would be proper to "consider the denial of a continuance from the hindsight of the record to determine if the defendant was substantially prejudiced by being required to proceed." (*Sullivan*, 52 Ill. App. 3d at 670, 367 N.E.2d at 1045.) Interestingly, the choice of counsel question had arisen earlier in the trial court proceeding, and the court granted a continuance to allow time for private attorney to appear. Commenting on that decision, the reviewing court noted: "the importance of enabling the defendant to exercise his right to be represented by counsel of his own choosing is generally deemed to outweigh the inconvenience to the prosecution, witnesses, court and jury *** unless it is shown that the defendant's actions were taken for the purpose of delay." *Sullivan*, 52 Ill. App. 3d at 669, 367 N.E.2d at 1044.

*People v. Mims* and *People v. Cole* are distinguishable on the basis that in both cases the amount of delay which would result from a continuance was uncertain because defendant had not yet retained new counsel. In *Mims*, the defendant merely requested a continuance for an opportunity to hire a private attorney because he felt he would be able to do much better with his own attorney if his family could raise the money for one. In *Cole*, the defendant requested a continuance to allow him time to obtain counsel who would not be forced to present inconsistent defenses for three codefendants. Under these circumstances, the *Mims* and *Cole* courts denied the motion for continuance, noting that defendant had failed to show any prejudice in the denial of the motion. (*Mims*, 111 Ill. App. 3d at 818-19, 444 N.E.2d at 687; *Cole*, 47 Ill. App. 3d at 779, 362 N.E.2d at 435.) The present case differs from these cases in that defendant informed the court that his family had hired private counsel to represent him and he was seeking a relatively short continuance of seven days to allow that counsel to appear. Thus, neither *Mims* nor *Cole* applies.

For these reasons, we order a new trial.

## II

■ Even if we had not ordered a new trial, we would have been compelled to order a new sentencing proceeding on defendant's second issue because the State failed to establish the sequence of prior convictions necessary to sentence defendant as a Class X offender. Contrary to the State's contention, this issue was not waived because

sufficiency of evidence issues are not waived by a failure to raise them at trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1131-32; *People v. Lighthall* (1988), 175 Ill. App. 3d 700, 705, 530 N.E.2d 81, 84.

■ Section 5—5—3(c)(8) of the Unified Code of Corrections provides:

> "(c)(8) When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).)

Thus, before a defendant may be sentenced as a Class X offender, it must be established that his first prior felony was committed after the effective date of the Act, the second after conviction on the first and the third after conviction on the second. A failure to establish that sequence requires vacating the sentence and remanding for resentencing. *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130.

It is clear that the State failed to demonstrate the necessary sequence of prior convictions in this case. The only evidence the State produced on defendant's prior convictions was the presentence investigation report, which showed the dates of arrest and conviction for the prior offenses but did not show the dates of their commission. Contrary to the State's contention, the dates of commission cannot be inferred from the dates of arrest and conviction. Since the State failed to present evidence on the dates of commission, it failed to meet the statutory requirements for sentencing defendant as a Class X offender. The failure to do so would warrant a new sentencing proceeding.

### III

Defendant's third issue is that the double jeopardy clause prohibits his retrial or resentencing as a Class X offender. He argues that the clause prohibits his retrial as a Class X offender because the State neither alleged nor proved at trial his prior convictions and that such was required to obtain enhanced sentencing. He argues

that the clause prohibits his resentencing as a Class X offender because the State failed to prove the proper sequence of his prior convictions as required by section 5—5—3(c)(8) of the Unified Code of Corrections. We find no merit to either of these arguments.

■ Under the posture of the law as of the date of trial in the present case, the double jeopardy clause would not prohibit defendant's retrial as a Class X offender because the State was not obliged to plead or prove his prior convictions to obtain a sentence enhancement.[1] The law that applied was that if a fact merely enhanced the penalty for an offense without changing the elements of the offense, it was unnecessary to plead or prove that fact at trial. (*People v. Mays* (1980), 80 Ill. App. 3d 340, 344, 399 N.E.2d 718, 721.) To obtain a burglary conviction, the State needed to prove defendant guilty of a knowing entry into a building, without authority and with the intent to commit a felony or theft. (Ill. Rev. Stat. 1985, ch. 38, par. 19—1(a).) To obtain enhanced sentencing for that burglary conviction as a Class X offender pursuant to section 5—5—3(c)(8) of the Unified Code of Corrections, the State needed to prove defendant's prior convictions. The prior convictions were therefore not elements of the substantive offense of burglary but merely matters to be considered for sentence enhancement. Accordingly, there was no requirement that they be pleaded or proven at trial. See *People v. Palmer* (1984), 104 Ill. 2d 340, 348, 472 N.E.2d 795, 799-800.

■ The double jeopardy clause also would not apply to resentencing because defendant was not placed in jeopardy at the first sentencing proceeding. The bar of double jeopardy precludes a second prosecution for the same crime after an acquittal or a conviction or multiple punishments for the same crime. (*People v. Young* (1983), 116 Ill. App. 3d 984, 989, 452 N.E.2d 718, 721.) Double jeopardy interests only are implicated in a sentencing proceeding if a defendant has been placed in jeopardy at that proceeding. (*People ex rel. Daley v. Strayhorn* (1988), 121 Ill. 2d 470, 477, 521 N.E.2d 864, 867.) That determination involves a consideration of whether the proceeding "was itself a trial on the issue of punishment." *Bullington v. Missouri* (1981), 451 U.S. 430, 438, 68 L. Ed. 2d 270, 279, 101 S. Ct. 1852, 1858.

---

[1]Our State legislature has amended section 111—3 of the Code of Criminal Procedure of 1963 (Pub. Act 86—964, eff. July 1, 1990 (amending Ill. Rev. Stat. 1985, ch. 38, par. 111—3)) to require the State to plead that it intends to seek enhanced sentencing and the prior convictions it will rely upon so as to give notice to defendant. It prohibits, however, disclosing these matters to a jury at trial. This legislation takes effect on July 1, 1990.

The sentencing proceeding in this case did not amount to a trial on the issue of punishment. It consisted merely of a presentation of the presentence investigation report, arguments by the State and defense counsel and a statement by the defendant. No witnesses were called to testify and there was no formal introduction of evidence. After the arguments and statement, the trial court sentenced defendant. This proceeding clearly lacked the hallmarks of a trial on the punishment (*Bullington*, 451 U.S. at 439, 68 L. Ed. 2d at 279, 101 S. Ct. at 1858), and the double jeopardy clause does not apply.

A case which is instructive on this issue is *People ex rel. Daley v. Strayhorn* (1988), 121 Ill. 2d 470, 521 N.E.2d 864. In that case, our supreme court rejected defendant's contention that the double jeopardy clause barred a remand for a death penalty hearing under circumstances where the trial court had conducted a sentencing proceeding similar to the one conducted in the present case and then sentenced him to 40 years in prison. The court's rejection of defendant's contention was based on its conclusion that defendant had not been placed in jeopardy by the sentencing proceeding. (*Strayhorn*, 121 Ill. 2d at 478, 521 N.E.2d at 867.) Similarly, in the present case, defendant was not placed in jeopardy by the sentencing proceeding. Since he was not placed in jeopardy, he may be resentenced as a Class X offender.

We need not reach the remaining issues raised by the defendant since they are unnecessary for our decision and, unlike the double jeopardy issue, do not predetermine the scope of any retrial.

For the reasons stated in parts I and II of this opinion, we reverse and remand this case for a new trial.

Reversed and remanded.

COCCIA, P.J., and LORENZ, J., concur.