THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL KENNARD, Defendant-Appellant.

First District (4th Division) No. 1—88—0652

Opinion filed September 27, 1990.

Michael J. Pelletier and Linda Eigner, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Sharon Jefferson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Michael Kennard, was found guilty of robbery. (Ill. Rev. Stat. 1985, ch. 38, par. 18—1(a).) He was subsequently sentenced to seven years' imprisonment. On appeal defendant raises four issues: (1) whether the State proved him guilty beyond a reasonable doubt where the identification of defendant was suggestive and inconsistent; (2) whether an out-of-court identification of defendant should have been suppressed; (3) whether defendant's post-trial counsel had an actual conflict of interest and did not adequately represent defendant; and (4) whether defendant was properly sentenced as a Class X offender.

BACKGROUND

The victim, Michael Robinson, testified for the State that about 10:30 p.m. on October 26, 1986, he went into the Mart Food and Liquor store near 72nd and Exchange Avenue in Chicago. There were lights on the outside and inside of the store. He noticed the security guard escorting a man out of the store. Robinson had an unob-

structed view of the man for about 90 seconds and noticed a scar on his nose. After buying a six-pack of beer, which he put in his bag, Robinson left the store.

At the corner of 72nd and Exchange, a man Robinson identified in court as defendant walked in front of him and demanded a beer. Robinson replied, "What?" and defendant said, "You must know karate." Robinson raised his hands in the air thinking defendant was going to hit him when another man grabbed him from behind around his neck. Robinson felt a hard, blunt object, which he thought was a gun, pressed against his back. He was taken around the corner to a building entranceway where defendant took Robinson's jewelry and his bag, which contained his wallet, tennis shoes, and security guard uniform. Defendant and his accomplice then fled.

Robinson went across the street and called the police. When they arrived, he described defendant as a 30-year-old black man of medium complexion with brown eyes and black hair, who appeared to be about six feet tall and weigh 160 or 170 pounds. Robinson also noted a "U-shaped" scar on his nose. Defendant was wearing a black hat, brown leather jacket, and black pants. Robinson could not describe the accomplice except to say that he noticed the man was short. Robinson said there was a streetlight at the corner and that he observed defendant for the duration of the incident, which he estimated to be about four minutes. Although the police drove Robinson around the area after the crime, he did not see defendant.

The next day Robinson realized that defendant was the same man he saw the security guard escorting from the store the night of the incident. Robinson testified that he then went to the store and told the guard about the robbery and described the assailant to the guard as the man the guard had ejected from the store the night before. The security guard, John Peterson, thought that he knew the man Robinson described and would call him if he saw that man. Robinson gave his name and address to Peterson. However, he did not contact the police and tell them he recognized defendant.

On October 30, 1986, Robinson received a call from Peterson, and he went to the store to make an identification. Robinson saw defendant handcuffed in the back seat of a squad car parked in front of the store. Defendant was about two feet from Robinson, who "instant[ly]" identified defendant as the man who robbed him. There was also a police officer in the car and the security guard was present.

John Peterson testified for the State that he asked defendant, whom he identified in court, to leave the store on the night of Octo-

ber 26, 1986. Defendant had been in the store on previous occasions, and the management did not want him in the store. There were about 20 to 30 "guys" who "hung out" across the street from the store and who were not allowed to enter.

On October 27, 1986, Robinson came to the store and told Peterson about the robbery. When Robinson described the offender, Peterson thought that he knew whom he was describing. During cross-examination Peterson said that Robinson did tell him that the offender was thrown out of the store the night before. However, upon clarification, Peterson said, "He said it was one of the guys that comes in here that is not supposed to be in the store." On redirect examination Peterson stated that after Robinson described defendant, he thought that he knew who the person was. Peterson was not permitted to testify to the specifics of Robinson's description.

On October 30, 1986, defendant came into the store, and after Peterson told him to get out, defendant appeared ready to strike Peterson when a package of baloney fell from under his jacket. Peterson and defendant then scuffled, and defendant was handcuffed and the police summoned. Peterson also called Robinson to tell him, "Come over here. I think I got the guy who robbed you." Peterson also told the investigating police to wait until Robinson arrived because defendant fit the description regarding a robbery assailant. Defendant was in a squad car in front of the store when Robinson arrived and the police said to Robinson, "Go ahead." Robinson then identified defendant as the man who robbed him.

After the State rested, defendant called Chicago police officer Benjamin Jones. He responded to the robbery call and took Robinson's statement. After Jones' memory was refreshed with the police report, he testified as to the description Robinson gave him for the assailant. He said that he "possibly" would have noted any unusual scars in Robinson's description of the assailant if Robinson mentioned them, although there was no notation of scars in the report. Jones' report did note that Robinson estimated the assailant's weight as 160 pounds.

Following defendant's arrest, Officer Jones and his partner completed a two-page arrest report. Jones testified that he wrote defendant's height at 6 feet, 1 inch, and estimated his weight as 180 pounds based upon his observation of defendant. While page two of the report showed defendant at 6 feet 1 inch and 185 pounds, the first page was changed showing defendant as 6 feet 2 inches and 210 pounds. It also noted a "heavy" build. Jones did not know who changed the first page. Neither page indicated that defendant had

any marks, scars or deformities. In a supplementary case report, Jones described defendant as 6 feet 1 inch and 185 pounds based on his observations.

Defendant's sister Kimberly Kennard testified on his behalf. She said that defendant had been living in her apartment in Des Plaines, Illinois, at the time of the incident, although she was in the hospital when the incident occurred. She recalled that during the summer of 1986, he was injured when someone attacked him, and as a result, he had a cut under his eye and on his nose. He also had a knee injury which made it difficult for him to walk. She said that he used crutches.

On cross-examination she said that defendant was injured in August 1986 and released from the hospital the same day. The hospital did not give defendant crutches but he got them from his mother. As a result of his injuries defendant sustained scars on his nose and under his eye. Kimberly testified that defendant still used crutches in October 1986. She said defendant had had a six-inch scar on the right cheek of his face since 1978.

Pamela Bell also testified for the defense. She lived near Kimberly Kennard, and while Kimberly was in the hospital, she would occasionally bring defendant a meal. She said that he used crutches and did not walk very well.

After the defense rested, the State called Chicago police officer Michael Thomas, who saw defendant in the early morning hours of August 5, 1986, at 71st and Clyde. Defendant was bleeding from the face and legs and could not stand on his own. Defendant was taken to the hospital.

Chicago police officer Malcolm Robinson testified that he saw defendant on August 21, 1986, at 7101 South Yates. Defendant was walking without crutches and appeared to walk without difficulty. Officer Robinson saw defendant about 20 minutes later and only noticed a slight limp in his walk. Defendant told the officer he lived at 7623 South Cornell and that he was 6 feet 1 inch tall and weighed 180 pounds.

OPINION

I

In the first issue defendant contends that he was not proven guilty beyond a reasonable doubt because Robinson's identification was unreliable. He argues that the identification resulted from the witness' viewing of defendant on October 30, 1986, under circum-

stances which were highly suggestive. Defendant also points to the discrepancies regarding his weight and facial scars in the victim's initial identification. In addition, he claims that the victim failed to tell the police when he described the offender that he had seen the offender in the store earlier that night.

The prosecution must prove beyond a reasonable doubt the identity of the person who committed the crime. (*People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.) The positive identification of one witness is sufficient to support a conviction as long as the witness is credible and he observed the offender under conditions permitting a positive identification to be made. (*People v. Hopkins* (1987), 160 Ill. App. 3d 967, 513 N.E.2d 1011.) The credibility of an identification witness and the weight accorded the witness' testimony are for the trier of fact to determine. (*People v. Godinez* (1989), 191 Ill. App. 3d 6, 547 N.E.2d 561.) The factors to be considered in assessing the reliability of an identification include: (1) opportunity of the witness to view the offender at the time of the crime; (2) witness' degree of attention; (3) accuracy of prior description; (4) level of certainty demonstrated at the confrontation; and (5) length of time between the crime and the confrontation. (*Slim*, 127 Ill. 2d at 307-08, 537 N.E.2d at 319.) A court will not overturn a jury's verdict of conviction unless the evidence leaves a reasonable doubt as to the guilt of defendant. *People v. Winston* (1987), 160 Ill. App. 3d 623, 513 N.E.2d 1121.

Robinson, the victim, had a good opportunity to view defendant face to face at the time of the offense. Defendant stood about one foot from Robinson, who observed defendant for about four minutes. Although it was night, there was a streetlight in the area. Robinson was able to describe his assailant's height, hair and eye color, approximate age, complexion, and clothing. The detail provided was not "generic" as defendant contends. When Robinson saw defendant four days later, he immediately identified defendant as the offender and made an in-court identification of defendant about eight months later.

Defendant points out that Robinson described defendant's weight as about 160 pounds, but notations in police reports made by the police following defendant's arrest on October 30, 1986, show defendant at 185 and 210 pounds. We note, however, that "[i]dentifications are normally based on the witness' total impression and recollection of the offender [and] not on particular facial features or physical characteristics." (*People v. Winston* (1987), 160 Ill. App. 3d 623, 628, 513 N.E.2d 1121.) Discrepancies as to height and weight alone typically are not decisive factors on review because few people

are capable of making accurate estimates of such characteristics. (*People v. Slim* (1989), 127 Ill. 2d 302, 537 N.E.2d 317.) This point is made apparent here by the fact that the police could not agree on an estimate of defendant's weight. Discrepancies and omissions of detail affect only the witness' credibility and the weight to be given the testimony by the trier of fact. Weight discrepancies are not unusual. For example, in *Winston*, the witness' estimate of defendant's weight was off by 40 pounds. See also *People v. Moore* (1977), 50 Ill. App. 3d 952, 365 N.E.2d 1356 (60-pound discrepancy); *People v. Chatman* (1975), 32 Ill. App. 3d 506, 336 N.E.2d 153 (more than 50-pound difference).

■ The discrepancy in weight relied upon by defendant appears to be between the victim's estimation and the police officers' description. The only evidence of defendant's actual weight was the rebuttal testimony of Officer Robinson, who spoke with defendant on August 21, 1986. Defendant told Officer Robinson that he weighed 180 pounds. The jury, who saw defendant in court and heard the testimony, was in a far better position to evaluate any discrepancy regarding defendant's weight, and we are unable to regard any discrepancy in the description as of decisive importance. *People v. Evans* (1962), 25 Ill. 2d 194, 184 N.E.2d 836.

Defendant also refers to the fact that Robinson failed to describe the scars on defendant's face. While Robinson testified that he told the police about the scar on defendant's nose, defendant claims that the police report does not indicate any scars in the description. He argues that this suggests that Robinson did not mention a scar.

Defendant's sister testified that defendant has a scar on his nose and one under the eye, which resulted from a confrontation in August 1986. He also has had a six-inch scar across his right cheek since 1978. Robinson did not mention the older scar, but said defendant had a "U-shaped" scar on his nose. Although Officer Jones apparently did not note any scars from Robinson's description of the offender, Jones testified that Robinson could have told him about the scar. It is true that Officer Jones did not record any scars on defendant in his report following his observation of defendant after his arrest on October 30, 1986.

■ As previously stated, discrepancies and omissions of detail affect only the witness' credibility and the weight given the testimony by the trier of fact. (*People v. Winston* (1987), 160 Ill. App. 3d 623, 513 N.E.2d 1121.) Robinson's failure to note facial scars on defendant was not sufficient to make the identification unreliable and raise a reasonable doubt of guilt. See *People v. Nims* (1986), 156 Ill. App.

3d 115, 505 N.E.2d 1121.

■ Defendant further claims that Robinson's testimony was discredited because he failed to tell the police that he had seen defendant in the store earlier that evening. (See *People v. King* (1973), 10 Ill. App. 3d 652, 295 N.E.2d 258.) When a witness is given an earlier opportunity and fails to assert a fact, the credibility of his later testimony as to the existence of such fact is adversely affected. (*People v. Fabian* (1976), 42 Ill. App. 3d 934, 356 N.E.2d 982.) Robinson explained that he did not realize until later that defendant and the man he saw earlier in the store were the same person because he was angry after the incident and wanted to go home. He also testified that he did not tell Officer Jones after he spoke to Peterson because he did not have a name or address for defendant. While Robinson did not tell the police, he did go to the store the next day and tell Peterson about the robbery and that he recognized defendant.

■ Questions of Robinson's credibility were for the trier of fact, and we do not find the evidence so improbable, unbelievable or unsatisfactory to disturb the jury's verdict.

In his reply brief defendant claims that Robinson's testimony indicated that the scar on defendant's nose was not "old and disfiguring," and that he had to be prompted to remember the scar during direct examination. As we noted earlier, a trained police officer failed to make a notation of defendant's scars. Moreover, the scar on defendant's nose to which Robinson referred was of recent origin, August 1986, compared to the scar on his cheek. The fact that Robinson first testified that he did not notice anything unusual about defendant and then was asked whether he noticed any distinguishing characteristics about defendant does not make his trial testimony unconvincing; Robinson had an unobstructed view of defendant for about 1½ minutes while in the store.

Last, defendant contends that the identification on October 30, 1986, was suggestive because of the involvement of the security guard. He claims that Peterson only knew Robinson was robbed by someone who was not allowed in the store and that Peterson could have been mistaken.

■ With this contention defendant appears to be attacking the credibility of Peterson's identification more so than Robinson's. Peterson's testimony is unclear as to whether Robinson told him that he was robbed by the man Peterson escorted from the store. Nevertheless, Robinson described defendant to Peterson in such detail that Peterson knew whom Robinson meant. Peterson testified that defendant was the same person he removed from the store on Octo-

ber 26, 1986. Accordingly, we conclude that Peterson's involvement in Robinson's identification of defendant on October 30, 1986, did not taint it.

## II

Defendant next contends that Robinson's October 30, 1986, identification of defendant should have been suppressed because it was a one-man showup under highly suggestive circumstances. He claims that there was no need for a prompt showup and the confrontation was not inadvertent. Acknowledging that suggestive pretrial identifications may be admissible if circumstances indicate reliability, defendant argues that the corrupting effect of the suggestive circumstances make the identification unreliable. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) Defendant notes that the description given by Robinson did not match defendant and the involvement of the security guard made the already suggestive showup identification unreliable. Defendant also asserts that the in-court identification should have been excluded because it resulted from the pretrial identification.

Initially, the State responds by claiming that defendant has waived the issue of a suggestive pretrial identification. We do not agree. Defendant filed a motion to quash the identification, and the court found that it would hear the testimony at trial and then decide the motion. The motion was subsequently denied. While the motion does not specifically allege suggestiveness of the identification, it does refer to defendant being identified in the back of a squad car and that the security guard did not witness the crime. There was sufficient information to put the State on notice that the identification procedure was in question. Defendant also raised the suggestive showup in his post-trial motion.

The State further argues that the identification procedure was initiated by the security guard and not the police so that no constitutional issue is involved. Security guard Peterson called Robinson to the store on October 30, 1986, for the purpose of an identification. Although Peterson initiated the identification and not the police (see *People v. Smith* (1972), 8 Ill. App. 3d 270, 273, 290 N.E.2d 261), the police waited and allowed Robinson to view defendant while defendant sat in the squad car. There was also a police officer in the car. We do not find that the police prompted Robinson; however, there was sufficient police involvement for us to address the merits of the showup issue.

Suggestive confrontations are disapproved because they in-

crease the likelihood of misidentification. (*People v. Hernandez* (1984), 121 Ill. App. 3d 449, 453, 459 N.E.2d 1013.) One-person showups have been widely condemned except under certain circumstances (*People v. McMath* (1970), 45 Ill. 2d 33, 256 N.E.2d 835), none of which are present herein. However, evidence of an unnecessarily suggestive identification can be admitted at trial, where, based upon the totality of the circumstances, reliability of identification is shown. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) Factors to be considered in determining reliability include: (1) the opportunity of the witness to view the offender at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of witness' prior description; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) length of time between the crime and the confrontation. (*Manion*, 67 Ill. 2d at 571, 367 N.E.2d at 1317; *People v. Frisby* (1987), 160 Ill. App. 3d 19, 32, 512 N.E.2d 1337.) Unnecessarily suggestive identifications may be admitted if reliable. *People v. Graham* (1989), 179 Ill. App. 3d 496, 534 N.E.2d 1382.

■■ The one-person showup in the case at bar was unnecessarily suggestive, but under the totality of the circumstances we find Robinson's identification of defendant sufficiently reliable to be admissible. (See *People v. Graham* (1989), 179 Ill. App. 3d 496, 534 N.E.2d 1382 (wherein a one-person showup conducted by a police officer seven days after the offense was sufficiently reliable under the totality of the circumstances).) As we previously discussed, Robinson had a good opportunity to view defendant at the time of the crime. He viewed defendant for several minutes at close range during the offense. There was a streetlight overhead. While defendant argues that Robinson's attention was affected by his belief that the other person was armed, the fact that Robinson may have been afraid does not undermine the validity of his identification. If that were so, every victim's identification based on face-to-face confrontation during an incident would be suppressed. See *People v. Robinson* (1987), 163 Ill. App. 3d 384, 516 N.E.2d 675.

Robinson was able to describe many of defendant's features. We have already discussed at length the discrepancies with respect to defendant's weight and facial scars. Robinson positively identified defendant without any hesitation four days after the offense. The fact that Robinson quickly identified defendant does not undermine his identification, nor do the facts indicate "coercive pressure" to make an identification. While the police were present, there was nothing in the record which showed they prompted or pushed Robin-

son to identify defendant. Once again, if presence of a police officer destroyed the validity of an identification, few identifications would be admissible.

Although defendant claims that Peterson's identification of defendant cannot be trusted, we have determined that Peterson's involvement did not render Robinson's identification unreliable. As we have already noted, Peterson's belief that defendant was the person who may have robbed Robinson was based on Robinson's description. Peterson knew defendant matched the description because he had seen defendant on prior occasions and he identified defendant as the person he escorted from the store on October 26, 1986. His credibility as a witness was for the trier of fact to determine. (*People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942.) We do not find Peterson's involvement of such magnitude that Robinson's identification of defendant was unreliable under the circumstances of this case.

In his reply brief, defendant refers to the lack of any other corroborating evidence identifying him, but Robinson's unequivocal identification was sufficient to convict him. (*Pietruszynski*, 189 Ill. App. 3d at 1078, 545 N.E.2d at 946.) The out-of-court identification was sufficiently reliable and was properly admitted, and the in-court identification was admissible.

### III

Defendant also contends that he should be granted a new hearing on his post-trial motions because post-trial counsel had an actual conflict of interest and failed to perform her duties as post-trial counsel. After his trial defendant filed a *pro se* motion alleging that his trial counsel was ineffective because she did not file his motions and "discoveries" with the trial judge when he was ready to hear them. The trial court appointed another assistant public defender from the multiple defender unit of the public defender's office to represent defendant during post-trial motions.

■■■ There is no *per se* conflict of interest when a public defender alleges ineffective assistance of counsel of another public defender from the same office. (*People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617.) In order to prevail on a claim of ineffective assistance of counsel because of a conflict of interest with the public defender, an actual conflict of interest is sufficient. (See *People v. Watson* (1987), 167 Ill. App. 3d 602, 520 N.E.2d 792.) A case-by-case inquiry to determine whether any circumstances indicate the presence of an actual conflict of interest must be made. *Banks*, 121 Ill.

2d at 44, 520 N.E.2d at 621.

Defendant herein claims that post-trial counsel did not advocate defendant's interests to the best of her abilities but defended her colleague's reputation. In support of this claim, defendant refers to the following remarks by post-trial counsel:

"[Defendant's] first complaint was that he believed that his lawyer was incompetent and did not speak to him about the case and did not handle the case to his satisfaction. The jury came back with a guilty of the charge, and he is complaining about his attorney.

I have ordered the transcript and read it. I do not see personally how the lawyer was incompetent. I do not know how many times Mr. Kennard was, in fact, interviewed by the lawyer, but he was, in fact, interviewed.

The questions were good, the witnesses against Mr. Kennard identified him, and the jury saw fit to find him guilty."

We do not find that these remarks show an actual conflict of interest by post-trial counsel. She reviewed the record and did not "personally" see how trial counsel was incompetent. This statement indicated that based upon her judgment, there was no issue of merit regarding defendant's claim of ineffective assistance of trial counsel. Counsel is not incompetent by refraining from raising issues which, in her judgment, are without merit, unless that appraisal is patently wrong. (See *People v. Barnard* (1984), 104 Ill. 2d 218, 470 N.E.2d 1005.) While defendant is not claiming that post-trial counsel should have raised meritless issues, he is claiming that she did not act as an advocate. However, defendant has not alleged any instances of ineffectiveness by trial counsel in his brief which he believes post-trial counsel should have advocated. He has not shown why post-trial counsel's assessment demonstrated an actual conflict of interest.

In his reply brief defendant asserts that post-trial counsel concluded that defendant was simply " 'complaining about his attorney' because 'the jury came back with a guilty verdict.' " The actual statement was "The jury came back with a guilty of the charge, and he is complaining about his attorney." This opening remark was merely a brief description of the nature of the proceeding before the trial court.

Defendant also claims that post-trial counsel was not prepared to argue his claim regarding the identification procedure used in this case. Post-trial counsel explained to the court that defendant was upset about the manner in which he was identified but that she did not see any legal basis for the motion to suppress. She said there was no

charge or allegation that the police officers in any way tried to ask the victim to identify defendant. Counsel said that defendant's dissatisfaction was with the security guard and not the police. On appeal defendant argues that if post-trial counsel had properly examined the record she could not have concluded that the police were not involved in the identification.

These remarks do not demonstrate that post-trial counsel was not prepared. Her remarks and statements throughout the record indicate that she examined the record. The record does not show that the officers asked Robinson to identify defendant. While they allowed him to observe defendant, they were not the instigators. Post-trial counsel's statements present her assessment of the issue and not that she was unprepared. Although her conclusion was inaccurate based upon our finding that the police were sufficiently involved, defendant was not prejudiced by her assessment as we have determined that the motion to suppress identification was properly denied. *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

The record also indicates that defendant's *pro se* post-trial motion which alleged that trial counsel did not file his motions and discoveries was addressed. Post-trial counsel explained that trial counsel did not have available to her the names of any people who were outside the store the night of the offense since defendant did not supply any names to post-trial counsel. She also went to the store and interviewed the cashier and manager but they could not recall anything. Post-trial counsel explained the difficulty of finding someone from the crowd. Post-trial counsel said that she reviewed the medical records in the file regarding defendant's injury and they would not have helped defendant as much as he wished. They indicated that defendant was injured and treated on the day of arrest, the date of which is not clear. We note there was testimony during the trial regarding defendant's knee injury; however, the State rebutted defendant's evidence. Post-trial counsel also said that Robinson had since lost his job and the security guard was also no longer working at the store.

Defendant explained to the court that on the day of trial, his attorney failed to physically provide defendant's *pro se* motion to quash the identification to the trial judge. He claimed that the trial court denied the motion because it was not on the desk or in the file. However, the record shows the motion was presented to the court on April 3, 1987, and it was set to be heard on April 13, 1987, the day of trial. On April 13, 1987, it was agreed that the motion would be decided after the court heard the testimony at trial. The court subsequently denied the motion following the trial but there is no indica-

tion that denial was based on the fact the court did not physically have the motion in hand or file. The record shows that defendant's *pro se* motion to suppress was presented to the trial court.

Post-trial counsel also filed a supplemental post-trial motion which alleged newly discovered evidence in the form of witnesses who could identify a perpetrator other than defendant. However, during the post-trial hearing, counsel explained that there was a conflict in presenting these witnesses because, while defendant was not identified as the perpetrator, he was identified as being at the scene of the incident. This evidence would contradict defendant's defense at trial that he was in Des Plaines, Illinois, at the time of the offense. Defendant then told the court that he did not want to proceed with the supplemental post-trial motion.

Based upon the record of the post-trial hearing, we do not find that defendant has introduced sufficient evidence of an actual conflict of interest by post-trial counsel. (*People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617.) Nor does the record demonstrate that post-trial counsel was unprepared to advocate defendant's position.

### IV

In his last issue, defendant contends that he was improperly sentenced as a Class X offender because the State failed to prove beyond a reasonable doubt the dates he committed the two prior felonies, as required under section 5—5—3(c)(8) of the Unified Code of Corrections. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8); *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942.) The statute provides:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977 [February 1, 1978]; and (2) the second felony was committed after conviction of the first; and (3) the third felony was committed after conviction on the second." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(c)(8).

Defendant does not raise an issue regarding proof of the prior convictions or arrests or his identification as the person convicted of the prior offenses. He does not dispute that he was over age 21 when convicted of the instant offense. Defendant's only claim of er-

ror is that there was no proof of the dates he committed the prior offenses and that these dates cannot be inferred from the dates of his arrests and convictions. *Pietruszynski*, 189 Ill. App. 3d at 1081, 545 N.E.2d at 948.

■■ Defendant admits that he did not object to the State's lack of evidence during the sentencing hearing. However, he contends that the State cannot circumvent its burden of proof under the Class X statute by claiming waiver. (*Pietruszynski*, 189 Ill. App. 3d at 1081, 545 N.E.2d at 949.) We agree that the issue has not been waived because sufficiency of evidence issues are not waived by failure to raise them at trial. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

The State acknowledges that appellate case law requires proof beyond a reasonable doubt of the Class X sentencing factors of section 5—5—3(c)(8). (*Pietruszynski*, 189 Ill. App. 3d 1071, 545 N.E.2d 942; *People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107.) Nevertheless, the State questions these authorities, to the extent they cite to or rely on *People v. Casey* (1948), 399 Ill. 374, 77 N.E.2d 812, which involved a prior version of the habitual criminal provisions. (Current version at Ill. Rev. Stat. 1989, ch. 38, pars. 33A—2 through 33A—3.) In *Casey*, the court held that before a defendant could be adjudged a habitual criminal based on his prior convictions, the State must prove beyond a reasonable doubt that the defendant accused of committing the prior offenses was the same person whose name appeared on the certified copies of the convictions offered into evidence. Under the statute then in effect, these prior convictions were to be proved at the trial for which the defendant was eligible for habitual criminal status. (The legislature subsequently amended the habitual criminal statute to ensure that proof of these prior convictions would be proven at the sentencing hearing, not the trial itself.) Ill. Rev. Stat. 1957, ch. 38, par. 603.3(a).

The supreme court has overruled that portion of *Casey* which held that the State's offer of certified copies of the defendant's prior convictions, without more, was insufficient to establish that defendant was the same person as named therein. *People v. Davis* (1983), 95 Ill. 2d 1, 447 N.E.2d 353 (identity of name on certified copies of convictions constitutes a rebuttable presumption of the identity of the person accused in a habitual criminal adjudication).

According to the State, *Casey* is not good authority for determining that the Class X sentencing factors should be proved beyond a reasonable doubt. The State implies that reasonable doubt was the appropriate standard under the old Habitual Criminal Act and *Casey*

because the State was required to present proof of the defendant's prior convictions at the trial on the defendant's pending charge. The prior convictions were thus elements of the offense being tried, thereby triggering the higher standard of proof. Since *Casey* has been partially discredited, the State would have us impose a lesser standard for the Class X sentencing factors, proof that is "reliable and relevant."[1] The apparent basis for this argument is the belief that the higher standard is only required if the prior convictions are considered actual elements of the offense for which the defendant is being tried.

In further support of its argument the State cites *People v. Washington* (1990), 195 Ill. App. 3d 520, 552 N.E.2d 1067, in which the fifth division of this court held that a defendant's prior convictions, for purposes of enhanced sentencing under section 5—5—3(c)(8), were not elements of the burglary charge for which he was tried. In *Washington*, that issue arose in the context of a double jeopardy concern: could a defendant be resentenced as a Class X offender without being tried twice for the same crime? The *Washington* court found he could be resentenced because the prior convictions necessary for sentence enhancement were not elements of the burglary offense for which defendant was tried. Accordingly, the State was not required to plead or prove the prior convictions at the burglary trial itself and the case could be remanded for resentencing without running afoul of the double jeopardy prohibition.[2]

The sixth division of this court also has stated that prior convictions under the Class X statute are not elements of the offense for which defendant is being tried. (*People v. Stewart* (1989), 186 Ill. App. 3d 833, 542 N.E.2d 915.) While the court did not address whether proof beyond a reasonable doubt was necessary to establish

---

[1]The current version of the habitual criminal statute prevents the prior convictions from being alleged in the indictment or disclosed at trial, unless otherwise permitted by the issues raised at trial. (Ill. Rev. Stat. 1987, ch. 38, par. 33B—2.) The courts consistently have found, however, that proof beyond a reasonable doubt is necessary when the State attempts to establish a defendant's prior convictions for sentencing purposes. *E.g., People v. Mays* (1988), 176 Ill. App. 3d 1027, 532 N.E.2d 843; *People v. Gill* (1988), 169 Ill. App. 3d 1049, 523 N.E.2d 1239.

[2]As pointed out by the *Washington* court, effective July 1, 1990, the State must provide in the charge that it intends to seek an enhanced sentence and state the prior conviction(s). However, these facts are not elements of the crime and may not be disclosed to the jury during trial unless otherwise permitted by issues properly raised during trial. (Ill. Rev. Stat. 1989, ch. 38, par. 111—3(c); *Washington*, 195 Ill. App. 3d at 530 n.1.) This section thus parallels the habitual criminal statute's restrictions against disclosing the prior offenses to the jury.

the prior convictions at the sentencing hearing, it found that the record did prove the prior convictions beyond a reasonable doubt.

We find no conflict between the principle that prior convictions are not elements of the substantive crime and the principle that the State must still prove those convictions beyond a reasonable doubt at the sentencing hearing. Indeed, the State's position is untenable because it confuses *when proof of prior convictions must be presented* with *what burden of proof is necessary*. The Class X sanctions are so substantial that a lesser standard of proof may well raise constitutional concerns. Indeed, presenting the proof of prior convictions at trial may well prejudice the jury and therefore the proper place for the evidence to be presented is during the sentencing. Accordingly, we find no support for the State's attempt to undercut the reasoning of the existing case law in favor of a lesser standard of proof regarding the dates upon which defendant committed the offenses for which his sentence is being enhanced. See *People v. Williams* (1990), 201 Ill. App. 3d 434; *People v. Hamilton* (1990), 198 Ill. App. 3d 108; *People v. Washington* (1990), 195 Ill. App. 3d 520, 552 N.E.2d 1067; *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942; *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130; *People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107.

The State's reliance on *People v. Perez* (1981), 101 Ill. App. 3d 64, 427 N.E.2d 820, also is misplaced. There, the court found that the aggravating factors necessary to impose an extended term did not require proof beyond a reasonable doubt. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b).) The court reasoned that the factors for establishing an extended term were not essential to the grade or degree of offense and did not have to be pleaded and proved. Therefore, the factors were not elements of the offense requiring proof beyond a reasonable doubt. The State argues that there is virtually no difference between the extended-term provision and Class X sentencing statute.

We do not agree. The extended-term determination (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)) is discretionary with the trial court (*People v. Miller* (1980), 90 Ill. App. 3d 422, 413 N.E.2d 143; *People v. Butler* (1979), 78 Ill. App. 3d 809, 396 N.E.2d 1374), while the Class X statute is not. (*Hamilton*, 198 Ill. App. 3d at 112-13.) Under section 5—5—3(c)(8) defendant's sentence *shall* be elevated to that of a Class X offense once the elements are satisfied. Thus, the mandatory nature of the statute distinguishes it from other sentencing provisions in which aggravating factors are considered. Moreover, since Class X offenses carry the substantial prison term of from 6 to

30 years, this higher penalty should not be imposed without proof beyond a reasonable doubt that a defendant actually has committed the prior offenses within the time frame set forth in section 5—5—3(c)(8). Accordingly, *Perez* is not controlling.

██ Based upon the mandatory nature of the Class X statute, the specific requirements set forth in the statute, and the considerable amount of authority on the issue despite the State's arguments to the contrary, we find that the State must prove the dates of commission of the prior offenses under the statute beyond a reasonable doubt. Although the State theorizes about the ill effects of such a holding on the factors in aggravation under section 5—5—3.2, this decision concerns section 5—5—3(c)(8) only and the mandatory nature of the Class X statute and its specific requirements. Nor do we believe that the proof required by the State to establish the dates of prior offenses places an undue burden on it.

The remaining question for us to answer is whether the State in the pending case sufficiently proved the dates that defendant committed the prior offenses, allowing the Class X sentencing to apply. Initially, we must determine whether this court may *infer* the dates the prior offenses were committed from the dates of arrests and convictions appearing in the record, without independent proof. Cases from the first, third, and fifth divisions of this court have found that the dates of commission of the prior offenses under the Class X statute could not be inferred solely from the dates of arrests and convictions. (*Pietruszynski*, 189 Ill. App. 3d at 1081, 545 N.E.2d 949; *Parks*, 168 Ill. App. 3d at 978, 523 N.E.2d 130; *Washington*, 195 Ill. App. 3d at 529, 552 N.E.2d 1067, respectively.) The Second District Appellate Court also has concluded that the dates of commission could not be established by dates of arrests and convictions. (*Hamilton*, 198 Ill. App. 3d at 111.) However, the second, third, and sixth divisions of this court have permitted inferences to be drawn from the dates of prior arrests and convictions in concluding that the sequence required by section 5—5—3(c)(8) was sufficiently established to sentence defendant as a Class X offender. *People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107; *People v. Williams* (1990), 201 Ill. App. 3d 434; *People v. Stewart* (1989), 186 Ill. App. 3d 833, 542 N.E.2d 915, respectively.

The *Stewart* court did not specifically indicate what standard of proof should be used, although it found that the record contained proof beyond a reasonable doubt. *Stewart* did analogize its use of inferences to that of a conviction based upon circumstantial evidence and inferences drawn therefrom. (186 Ill. App. 3d at 838, 542 N.E.2d

at 919.) Convictions require proof beyond a reasonable doubt. Thus, we infer from *Stewart* that the evidence and inferences drawn therefrom were sufficient to prove the dates of commission of the offenses beyond a reasonable doubt. See *People v. Williams* (1990), 201 Ill. App. 3d 434 (wherein inferences were drawn for proof beyond a reasonable doubt); *People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107 (wherein the second division of this court also drew an inference concerning the commission date of an offense to find proof beyond a reasonable doubt).

 Although defendant urges this court to adopt the stricter approach of *Washington, Parks,* and *Pietruszynski,* we believe the approach in *Williams, Stewart* and *Harris* is the better one. We conclude that it is permissible to infer from the evidence of record that a defendant has committed the requisite offenses in the necessary order, as long as the specific facts of the case support the inference. Here, the record contains the dates of arrests and convictions for each of defendant's previous felonies. The amendatory act of 1977 took effect on February 1, 1978. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(c)(8).) From the record we note that defendant was arrested for burglary on August 3, 1979. (*Cf. People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 1081, 545 N.E.2d 942 (wherein the defendant was arrested on February 19, 1978, for burglary, which may have left some doubt as to when he committed the first offense).) Defendant was convicted of that Class 2 burglary offense on August 24, 1979, and sentenced to two years of probation. The criminal history of defendant indicates probation on this conviction while another part of the presentence investigation report states, "2 years term IDOC 11/81." During the sentencing hearing, however, the assistant State's Attorney stated that defendant received probation. Defendant was arrested on May 2, 1980, for burglary and convicted of that Class 2 offense on March 26, 1981. He was sentenced to three years' imprisonment.

 It reasonably can be inferred from the above that defendant's first felony (for which he was arrested on August 3, 1979) was committed after February 1, 1978. It was logical for the trial court to infer that defendant's second felony, for which he was arrested on May 2, 1980, was committed after his first felony conviction on August 24, 1979, during the time defendant was on probation. The instant offense was committed on October 26, 1986, approximately 4½ years after his conviction of the second felony on March 26, 1981. The record indicates that defendant's offenses and convictions occurred in the sequence required under section 5—5—3(c)(8). (Ill. Rev.

Stat. 1987, ch. 38, par. 1005—5—3(c)(8); see *Williams*, 201 Ill. App. 3d at 437-38; *Stewart*, 186 Ill. App. 3d at 838, 542 N.E.2d 915.) Under these particular circumstances, we can conclude that the requirements of section 5—5—3(c)(8) were proved beyond a reasonable doubt and defendant was properly sentenced as a Class X offender.

In view of our determination, we need not address the double jeopardy issue not specifically raised by defendant but argued by the State.

Based on the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.