THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD KINZER, Defendant-Appellant.

First District (4th Division)   No. 1—88—0397

Opinion filed May 23, 1991.—Rehearing denied June 19, 1991.

---

Randolph N. Stone, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Bonnie Meyer Sloan, Special Assistant State's Attorney, and Renee Goldfarb, Theodore Burtzos, Guy L. Miller IV, and Michael Oppenheimer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial, defendant Ronald Kinzer was found guilty of robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—1) and sentenced to the penitentiary for a term of six years. The issues on appeal are whether defendant was denied effective assistance of counsel and whether he was improperly sentenced as a Class X offender.

We affirm defendant's conviction and sentence.

BACKGROUND

At trial, complainant testified that about 8:30 p.m. on November 26, 1986, she walked into the well-lit vestibule of her apartment building at 7007 North Sheridan in Chicago. As she put a key in the security door that provides access to the interior hallways of the building, she observed a man talking on an intercom that was located in the vestibule. The person was standing right beside her, "shoulder to shoulder." He was wearing a nylon jacket with a hood over his head and he was "shivering." Complainant was able to see this man's face and she identified him as defendant. She also identified the nylon jacket worn by him.

As complainant opened the security door, defendant held open the door and followed behind her into the interior hallway where the tenants' mailboxes were located. According to complainant, this area was also well-lit. When complainant went to her mailbox, defendant bumped her from behind and started to take her purse, but she turned around and faced defendant. Describing the next sequence of events, complainant stated, "my arms were full of packages, and he grabbed the strap off my shoulder. As I turned around, the purse swung around me, and we proceeded to struggle with it," during which time she was again able to observe defendant's face. Defendant finally knocked her to the ground and ran away.

Complainant called the police and described her assailant as a 5-foot, 7-inch-tall, 20-year-old black man with a medium build, and wearing a hooded jacket. About 10:30 that evening she accompanied the police to a squad car parked outside the apartment building. The police asked her to identify defendant, who was inside the car. Complainant testified, "I hesitated because the man did not have on the

same coat that I had seen in the hallway. It was very dark on the street and I couldn't see his face." She made a tentative identification of defendant but told the officers that she "wanted to get a better look at him." The officers had defendant remove the outer coat he was wearing. Underneath that coat, he wore a jacket similar to the one the robber had worn. Complainant accompanied the police to the station. Defendant was placed alone in a well-lit room. Complainant stood in an adjoining room and identified him as her assailant. During cross-examination, defense counsel questioned complainant about details of her assailant's physical appearance including the color of his hair, the presence or absence of facial hair, the color of his clothing and whether she noticed a tear in the jacket. Defense counsel also had her acknowledge that the hood that was on assailant's head was large, thereby raising the inference that complainant was not able to get a clear view of his face.

Two police officers involved in the robbery investigation, one of whom apprehended defendant, corroborated complainant's testimony regarding her description of her assailant and her identification of defendant outside her apartment and at the police station. The officer who apprehended defendant stated that defendant told him that he had been at a nearby park to meet his sister who was going to give him a set of house keys. The officer indicated that the park was about one mile from the park in which complainant's purse was found.

Natasha Kinzer, defendant's sister, testified that she met her brother at a park about 8:30 p.m. for the purpose of giving defendant a set of house keys. Defendant's mother testified that defendant left the house about 8:30 p.m., and that he told her he was going to meet his sister at a nearby park.

Defendant testified that he left his house about 8:30 p.m. to meet his sister at the park. He estimated the park to be about 1½ miles from the scene of the incident. He visited with her a few minutes and then walked to a nearby convenience store to buy some food. The police stopped him in the store's parking lot and told him that he fit the description of a person who had just committed a robbery. When defendant denied any involvement, the officer told defendant that he had two choices, "either go with him willingly, or he would have to put handcuffs on [defendant]." Defendant testified that at the time of the offense he was between 5 feet 9 and 5 feet 11 inches tall, weighed about 145 pounds, and had sideburns, a mustache and a goatee. He added that he was wearing three jackets, and that the middle jacket had a hood and was torn. Defendant also testified that when the hood

was on his head, it concealed much of his face and "flops down" to his eyebrows.

In finding defendant guilty, the trial court stated:

"Her [complainant's] testimony was credible and forthright. Although, possibly, a line-up might have been a better way to go about doing this, without the victim ever seeing the defendant prior to the line-up, show-ups are permissible.

This particular witness, Miss Miller, was not, from what I saw, from how I saw her testimony, and from her testimony, was not going to identify someone who was not the perpetrator of the offense. She was quite certain. She wanted to make certain that she was, in fact, identifying the right person.

The officer testified, Officer Ruben testified that he observed the defendant on the street. He fit the description he had heard earlier over the radio. That the victim, Miss Miller, viewed the defendant in an interview room, and said that was definitely him.

He did not recall showing the defendant to the victim on the street more than once, and he did not think that—he did not recall if the victim viewed the defendant several times at the police station, however, he did not think so. He did recall the victim saying, the lighting condition was poor outside, and she wanted to see him in better light.

So, as far as the identification, again, as I said earlier, possibly a line-up would have been a better way of doing it, but under these circumstances, and it is upheld, show-ups are permissible. I believe it was a proper identification of the defendant."

At sentencing, the trial court considered the presentence investigation, criminal histories provided by the State police and the Chicago police department, and matters argued in aggravation and mitigation. In aggravation, the State argued that defendant was eligible to be sentenced as a Class X offender because of two prior burglary convictions in 1980 and 1981. In mitigation, defense counsel referred to a steady employment history, a stable family background, defendant's cooperation with the police, the fact that he was only 17 and 18 years old when convicted of the two burglaries, that he supported his girlfriend and her three children, and that his character and attitude suggest that it is unlikely that he will commit another crime.

In sentencing defendant to the minimum sentence allowed a Class X offender, the trial court explained that it was mandated by statute to sentence him as a Class X offender, stating:

"It goes on to give the paragraph, shall not apply unless the first felony was committed after the effective date of the mandatory act of 1977 finding the first act—first burglary was 1980 and two, the second felony was committed after conviction on the first, which is 1981. And that this third conviction which you have been convicted for here was committed after conviction of the second. I find all those factors to be present as set forth in the statute."

OPINION

I

Defendant first argues that he was denied effective assistance of counsel because his attorney failed to challenge complainant's identification testimony. He characterizes this testimony as "weak" because of complainant's failure to observe defendant's mustache and correctly identify the color of his jacket, and because of the fact that her assailant had a hood on his head at the time of the incident. Defendant reasons that defense counsel's failure to recognize the problems with complainant's identification and to suppress such identification testimony was fatal to his case since complainant was the only witness to the incident.

In considering this issue we are guided by the holding in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, wherein the supreme court adopted the two-part Federal standard to evaluate alleged claims of ineffective assistance of counsel. Defendant must prove that counsel's representation fell below an objective standard of reasonableness so as to deprive defendant of a fair trial and that, but for counsel's errors, the result of the proceeding would have been different. (*People v. Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255.) Moreover, as a court of review, we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable representation. (*People v. Mack* (1984), 105 Ill. 2d 103, 473 N.E.2d 880.) After reviewing defense counsel's conduct during trial and applying the above standard to that conduct, we find that defendant's claim is meritless. The record indicates that defense counsel vigorously cross-examined complainant and posed several questions designed to challenge her ability to observe her assailant during the incident and the sufficiency of her identifications of defendant. Defense counsel also cross-examined the officer who was present when complainant identified defendant outside the apartment and at the police station. As with complainant, he posed questions designed to chal-

lenge the identification of defendant, as well as the manner in which the identification was conducted at the police station. It is noteworthy that the officer testified during cross-examination that he initially stopped defendant because the jacket he was wearing, and his height and weight, fit the description provided by complainant.

■ We disagree with defendant's characterization of complainant's description and identification as "weak." Defendant states, "[b]asically, Ms. Miller's description of the assailant boils down to a man wearing a light colored hooded jacket." This comment ignores complainant's testimony at trial that she also gave a physical description of her assailant. Defendant testified that he was somewhat taller than complainant described and had a mustache and goatee. He acknowledged that when the police stopped him, he was wearing a hooded jacket. Although there were some inconsistencies between defendant's description of himself and complainant's description, such differences were minor and had no impact on the sufficiency of complainant's identification since a witness need not describe the offender with complete accuracy. (*People v. Herrett* (1990), 137 Ill. 2d 195, 561 N.E.2d 1.) It is also noteworthy that the focus of defense counsel's closing argument was to point out discrepancies in complainant's testimony, thereby attempting to undermine her credibility as a witness. Under the circumstances of this case, we conclude that defense counsel's representation did not fall below an objective standard of reasonableness so as to deprive defendant of a fair trial, and that, to the contrary, counsel presented a thorough and vigorous defense.

## II

■ Defendant next argues that the State failed to prove that he was eligible to be sentenced as a Class X offender because the State failed to offer evidence establishing when the alleged prior offenses were committed. The statute pursuant to which defendant was sentenced provides:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois, and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was

committed after conviction on the second." Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).

■ Resolution of this issue requires a determination as to the standard of proof that the State must meet to support the imposition of a Class X sentence. The law is clear in this district that the State must prove the dates of commission of the prior offenses under the Class X statute beyond a reasonable doubt. (*People v. Kennard* (1990), 204 Ill. App. 3d 641, 660, 561 N.E.2d 1188, 1199; but see *People v. Shelton* (1991), 208 Ill. App. 3d 1094, 567 N.E.2d 680.) However, in this district there is a division as to what kind of proof satisfies this standard. The first and fifth divisions of this court hold that the dates of commission of the prior offenses cannot be inferred solely from the dates of arrests and convictions. (*People v. Washington* (1990), 195 Ill. App. 3d 520, 552 N.E.2d 1067; *People v. Pietruszynski* (1989), 189 Ill. App. 3d 1071, 545 N.E.2d 942.) A contrary position has been taken by the second, fourth and sixth divisions of this court. (*People v. Kennard* (1990), 204 Ill. App. 3d 641, 561 N.E.2d 1188; *People v. Stewart* (1989), 186 Ill. App. 3d 833, 542 N.E.2d 915; *People v. Harris* (1987), 157 Ill. App. 3d 70, 510 N.E.2d 107.) The third division has issued divergent opinions. (*People v. Williams* (1990), 201 Ill. App. 3d 434, 559 N.E.2d 96; *People v. Parks* (1988), 168 Ill. App. 3d 978, 523 N.E.2d 130.) We believe that the better approach is that taken in *Kennard, Williams, Stewart* and *Harris*.[1] Accordingly, we conclude that it is permissible to infer from the evidence of record that a defendant has committed the requisite offenses in the necessary order, as long as the specific facts of the case support the inference. *People v. Kennard,* 204 Ill. App. 3d at 661, 561 N.E.2d at 1200.

■ Applying this approach to the record in the instant case, we find that the State proved the dates of commission of the prior offenses by circumstantial evidence and beyond a reasonable doubt. The record indicates that defendant was arrested for burglary, a Class 2 felony, in October 1980, convicted in November 1980 and sentenced to probation. He was subsequently arrested in July 1981 for burglary, while on probation for the first burglary, convicted in October 1981 and sentenced to a term of imprisonment. It reasonably can be inferred from this record of prior felony arrests and convictions that defendant's first felony (for which he was arrested in October 1980) was committed after February 1, 1978, the effective date of the Class X sentencing statute. It was logical for the trial court to infer that

---

[1]We note that this issue is now before the supreme court.

defendant's second felony (for which he was arrested in July 1981) was committed after his first felony conviction of November 3, 1980, and while he was on probation. The instant felony offense was committed on November 26, 1986, approximately five years after defendant's second felony conviction. Therefore, the circumstantial evidence of dates of arrests and prior convictions for felony offenses proved beyond a reasonable doubt that defendant's offenses and convictions occurred in the sequence required under the Class X sentencing statute, and that defendant was, therefore, properly sentenced as a Class X offender. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).) In view of this finding, we need not consider defendant's argument that double jeopardy precludes the State from attempting to resentence him as a Class X offender.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.